## Stephen Smith's Appeal.

*A guardian is entitled to credit for moneys advanced to his ward to enable him to complete a medical education.*

APPEAL from the Orphans' Court of *Philadelphia*.

This was an appeal by Stephen Smith from the decree of the Orphans' Court, in the matter of his account as guardian of Thomas Y. Savage.

On the 14th September 1844, Stephen Smith, the appellant, was appointed guardian of the estate of Thomas Y. and William Savage, two colored children, who resided with their mother, in Philadelphia.

John M. Savage, the father of the wards, died in Monrovia, in Africa, in 1840, leaving a will, whereby he gave to his wife one-fourth of his estate, and a fourth to each of his children, a daughter and the two sons above named. In case of the death of either of them, in their minority, the share of the deceased was to be equally divided between the survivors. The daughter died, unmarried, and without issue. The guardian filed an inventory in 1845, showing that he had received $14,150, belonging to the sons.

In the summer of 1854, Thomas Y. Savage, who had been studying medicine in Canada, determined, with the consent of his mother, to visit Europe for the purpose of completing his medical education. He came to Philadelphia to make arrangements for the necessary funds to pay his expenses, and on the 24th June, he accompanied his guardian, Stephen Smith, and his uncle, John Henderson, to the office of a conveyancer, when the following bond was executed by the latter, and delivered to Smith.

"Know all men, by these presents, that I, John Henderson, of the city of Camden, in Camden county, in the state of New Jersey, gentleman, am held and firmly bound unto Stephen Smith,

[Stephen Smith's Appeal.]

of the city of Philadelphia, in the state of Pennsylvania, lumber merchant, in the sum of $3000, lawful money of the United States of America, to be paid to the said Stephen Smith, his certain attorney, executors, administrators, or assigns. To which payment, well and truly to be made, I do bind myself, my heirs, executors, administrators, and every of them, firmly, by these presents. Sealed with my seal, dated the *24th day* of June, in the year of our Lord 1854. Whereas, Stephen Smith, the obligee above named, is the guardian of Thomas Y. Savage, of Toronto, Canada West, a minor, and at the special instance and request of the above bounden John Henderson, hath this day advanced unto the said Thomas Y. Savage, the sum of $1500, the repayment of which, with interest, the said John Henderson doth hereby intend to guarantee. Now, the condition of this obligation is such, that if the said John Henderson, his heirs, executors, or administrators, shall cause and procure the said Thomas Y. Savage, on his arrival at the age of twenty-one years, to pay or cause to be paid unto the said Stephen Smith, his heirs, executors, or administrators, the said sum of $1500, lawful money as above said, together with lawful interest for the same in like money; or in case the said Thomas Y. Savage should die, before arriving at the age of twenty-one years, if the said John Henderson, his heirs, executors, or administrators, shall pay or cause to be paid unto the said Stephen Smith, his heirs, executors, or administrators, the said sum of $1500, such as aforesaid, together with lawful interest for the same, in like money; and also shall and do from time to time, and at all times hereafter, well and sufficiently save, keep harmless and indemnified, the said Stephen Smith, his heirs, executors, and administrators, and his and their goods and chattels, lands and tenements, of and from all actions, suits, payments, costs, charges, and damages, for or by reason of the advance aforesaid, then this obligation to be void, or else to be and remain in full force and virtue. And I further hereby empower any attorney, of any of the courts of record in this state, or elsewhere, to appear for me, and after one or more declarations filed for the above penalty, thereupon to confess judgment or judgments against me, as of the last, next, or any subsequent term, with stay of execution until the 1st day of December, A. D. 1854."

On the day of the execution of this bond, Smith advanced to Henderson $1500, by check payable to his order. Henderson received the money, and gave $500 of it to Savage, who then proceeded to Europe.

Savage became of age on the 20th November 1854, and on the 21st drew on Smith for $500 in favour of Henderson, for which Smith was allowed a credit.

Henderson afterwards absconded. There was no evidence whether or not he paid Savage the whole of the $1500 advanced

[Stephen Smith's Appeal.]

by Smith, except the declarations of Savage himself to the contrary, in his letters to Smith.

The auditor refused to allow a credit to Smith for the $1500 so advanced, but reported that he was entitled to credit for so much of it, as was proved to have been actually received by Savage, to wit, $500. Both parties excepted, and the court disposed of the exceptions by charging Smith with the whole $1500. From this decree the appeal was taken.

*Gibbons* and *G. M. Wharton*, for the appellant.—More ought not to be expected from guardians than common, prudential care; they should not be made liable, unless under unfavourable circumstances. Their acts expose them to the animadversions of the law for *supine negligence*, showing carelessness of their duty and of their wards' interests: Johnson's Appeal, 12 *S. & R.* 317; Konigmacher *v.* Kimmel, 1 *Penn. R.* 213; Eyster's Appeal, 4 *Harris* 376.

The medical education of the ward was a necessary, under the particular circumstances of the case, for which the guardian ought to be allowed a credit: Shollenberger's Appeal, 9 *Harris* 343; 2 *Kent Com.* 239; *Co. Lit.* 172 *a; Bingham on Infancy* 87; Leech *v.* Agnew, 7 *Barr* 22; *Lewin on Trusts* 413; Lee *v.* Brown, 4 *Ves.* 369; Norris *v.* Fisher, 2 *Ash.* 411.

*Thayer*, for the appellee.—It is the settled practice of this court not to review or reverse the decision of an auditor upon facts, unless in a case of palpable and clear mistake: Loomis's Appeal, 10 *Harris* 312; Quain's Appeal, *Id.* 510; Whiteside's Appeal, 11 *Harris* 114; Bull's Appeal, 12 *Harris* 286; Burroughs's Appeal, 2 *Casey* 264.

After a careful review of all the evidence, the auditor has found as facts in the present case: 1. That Savage was a minor at the time of the advance of the $1500 to Henderson. 2. That the evidence did not show that the money was advanced for the ward's education.

The law has made it the duty of the guardian to apply to the Orphans' Court for authority to make allowances for his ward's education: Act 29th March 1832, *Brightly's Purd.* 192.

The transaction seems to have been a scheme of Henderson's to but possession of the money with which he shortly afterwards absconded. His bond recites, that the money was advanced "at his special instance and request." He seems to have considered it in the light of a loan to himself, for when he subsequently loaned Savage five hundred dollars, he required him to repay it by a draft on his guardian.

The short answer to the appellant's whole case is that which this court gave to a guardian for a similar breach of duty.

[Stephen Smith's Appeal.]

"When a guardian puts another in his place, to do what he might and should have done in his proper person, he takes the whole peril on himself. If the agent becomes insolvent, the ward cannot be turned over to him:" Wills's Appeal, 10 *Harris* 329.

The opinion of the court was delivered by

THOMPSON, J.—The appellant has failed in essential particulars to sustain his first assignment of error in this case. We must take the fact as found by the auditor, that Savage arrived at age on the 20th November 1854. The money was paid over to Henderson on the execution of the bond of the 24th of June 1854, so that being under age at the time he was not answerable, although in fact paid for his use and with his assent, unless Smith could show that Savage did actually receive it, and that it was applied towards defraying the expenses of his education and maintenance. If this could have been established there was nothing in the transaction which would have exonerated his estate from making good the advancement. In Shollenberger's Appeal, 9 *Harris* 343, guardians were allowed expenses of education not disproportioned to the condition and the value of their ward's estate. Necessaries include education: *Bingh. Inf.* 87. "Where an infant's contract is beneficial, it binds him in infancy and at age; when prejudicial, it is void from the beginning:" Leech *v.* Agnew, 7 *Barr* 22. Lord COKE says, "an infant may bind himself to pay for his necessary meat, drink, apparel, necessary physics, and such other necessaries; and likewise for his good teaching or instruction, whereby he may profit himself afterwards:" 1 *Coke's Inst.* sec. 259; see also 2 *Kent Com.* 239. Where the necessaries are suitable to the ward's condition and estate, his contract binds. In the case of Savage, no one could well doubt that the sum obtained by Henderson from Smith for him, would have been a proper allowance to him in completing his medical education, which it is said he could only do by going abroad. But the misfortune of the guardian consists in his inability to show anything over the sum of $500 received by Savage, and applied to the object in view; and to this extent we think the guardian should have been allowed.

This sum was actually received by Savage when he went abroad, and this is admitted by him after coming of age. He claims, too, to have paid it back to Henderson on a draft drawn by him on his guardian two days after he came of age. If this were so, his conduct cannot be approved except upon a disregard of all just action. He had obtained the money to go abroad by the guarantee of Henderson, that when he arrived at age he would settle and account with Smith for it. He was present and heard the arrangement, assented to it, and got the money under it. He now sets up that on coming of age he paid it back to Henderson, who is worthless, and looks to his guardian to pay over again to him. He

[Stephen Smith's Appeal.]

recognises in his letters his obligation to restore or account for the money, and admits that he was bound to do it, although made while a minor. He does not repudiate it, and claims to have paid it: if he did, it was to the wrong man. We hold him to the duty of paying to the proper party, his guardian, who will then be the loser of over $1000. But independently of this, there is evidence showing a use of the money that entitles the guardian to a credit for it on the principles of the authorities cited.

Now, to wit, March 8th, 1858, Decree of the Orphans' Court reversed, and the auditor's report confirmed, and decree of distribution accordingly. The costs of this appeal to be paid by the appellee.