## Roumfort, Administrator of Miller, *versus* McAlarney.

1. A creditor of a decedent's estate cannot pay himself by withholding the property of the estate in his possession from the administrator.

2. A sale of goods of an intestate to one of his creditors by his widow, before letters of administration have been taken out, the goods being in the possession of the creditor at the time of the sale, and the creditor not paying for them, passes no title.

3. The fact that the widow afterwards paid debts of the estate with her own money does not make the sale a valid one, so as to pass a title to the goods.

4. M. and McA. were partners in the practice of the law; M. died leaving his law library in the possession of McA. The widow of M. undertook to settle his estate without taking out letters of administration and made a sale of the library to McA.; she paid some of, M.'s debts with her own money. The library was never paid for. Afterwards R. took out letters of administration on M.'s estate and brought an action of replevin to recover the library: *Held* (reversing the court below), that the sale to McA. passed no title and that R. could recover.

5. *It seems* that if the widow had had possession of the property, had sold it to the defendant and applied the purchase-money to the payment of his debts, there would have been a quasi administration which it would be inequitable to disturb.

May 26th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Common Pleas of *Dauphin county:* Of May Term 1876, No. 104.

This was an action of replevin, brought by Roumfort, administrator of W. H. Miller, against J. C. McAlarney, for a law library. The defendant pleaded "*non cepit*" and "payment," and when the case was called for trial added a plea of "property." It appeared that Miller and McAlarney had been partners in the practice of the law, and that the books in question, which belonged to Miller, had been used by the firm, and upon Miller's death had remained in the possession of the surviving partner, McAlarney.

At the trial the plaintiff gave evidence to prove that the title to the books was in Miller at the time of his death (as to which there was no dispute), and to prove a demand for them by the administrator upon the defendant.

The appraisers appointed to appraise the personal estate of the decedent testified that they had performed their duties in May 1871, and that at that time McAlarney pointed out General Miller's library to them and made no claim to it.

Roumfort's evidence was as follows:—

"I took out letters of administration on W. H. Miller's estate, April 19th 1871. From the time I was appointed till I demanded the library in July 1872, I had several interviews, and a distinct recollection that Mr. McAlarney said he couldn't get along without

1 NORRIS—13

[Roumfort *v.* McAlarney.]

the library. He expressed regret that he was obliged to part with the library. I told him if he would give me security for the appraised value of the library he might retain it. He said this proposition was satisfactory, but he never gave the security or paid any money. No 'claim to the property in the library was ever made by him direct or indirect. He never complied with the proposition."

Cross-examined: "He never paid anything to me. I do not know that he paid anything for the library. All the debts of the estate were paid. I got the money partly from sales and partly from Mrs. Miller. I paid all. Mr. Kreiter had a claim; he had a settlement with Mrs. Miller."

For the defendant, an offer was made to prove that Mrs. Miller, the widow of General Miller, sold the library in question to the defendant, to be followed by proof of payment of the debts of the decedent with the proceeds of the sale, and that this sale was prior to the taking out of letters by the plaintiff. This was objected to by the plaintiff as irrelevant, on the ground that Mrs. Miller had no right to sell the library. The court admitted the evidence as relevant under the plea of "property," reserving its effect till the whole case had been heard. The plaintiff excepted.

The defendant, Mr. McAlarney, then testified as follows:—

"A short time after the death of General Miller, the widow came to me and said she would pay all his debts. She wanted me to take the library. I told her, that as a lawyer, I knew and she knew that she had no legal right to dispose of the property, because she was simply a widow, but if she would take out letters of administration it would be all right. But she said she did not want any trouble, that she proposed to pay the whole of it. I advised her against it, and refused to have anything to do with it. I gathered a number of bills. She paid a number of bills.

"Mr. Kreiter came to my house and got schedule list of books. He came back with price of these books at $426.50. I gave a statement of accounts between Miller and myself. I agreed to take the office furniture and library at prices stated. Mr. Kreiter took it away. I took the library under that agreement. I wrote to Mrs. Miller 24th of June 1872. I have had the books ever since. I have claimed the property ever since the purchase."

The defendant then offered in evidence a statement and partial settlement of his accounts with the estate of Miller, dated March 24th 1871, to be followed by proof of acceptance and agreement to its terms by Mrs. Miller, in order to prove the alleged sale to McAlarney. This evidence was objected to and admitted under exception.

This statement charged the estate of Miller with certain sums due to the firm by the estate, credited it, among other things with the appraised value of the law library in question and with Miller's share of the furniture (both of which McAlarney therein agreed to

[Roumfort v. McAlarney.]

take at the valuation set upon them) and showed a balance due by McAlarney to the estate of $168.25. There was no evidence that McAlarney ever paid this balance.

J. M. Kreiter was then called by the defendant and testified as follows:—

" This paper (the settlement) is in my handwriting. I acted for Mrs. Miller by her authority. Went to Mr. McAlarney, and made a final settlement—valuation of library—she agreed and consented to sell the library to Mr. McAlarney at that price. I read the paper to Mrs. Miller ; she was satisfied, and all that was necessary was to get Mr. McAlarney's name. The endorsement was made in General Roumfort's dining-room—she was staying there. I left the paper with Mrs. Miller ; we considered it settled. Mrs. Miller made payments of debts of the estate. I settled with Bolton $900 —with Shoemaker. We made a settlement on the 1st of April of the matters between General Miller and myself. It was an obligation of the general's that I held ; $3433.06 was the balance and she gave me her obligation for that."

Roumfort's administration account (duly confirmed by the proper court) was then put in evidence by the defendant, showing a settlement of the estate and the payment of all debts, partly, however, with the aid of $1114.03 advanced by Mrs. Miller for that purpose.

The case was then closed.

The only point submitted was by the plaintiff, as follows :—

That Mrs. Miller, after the death of her husband, was incompetent in law to sell or dispose of his personal property, and any arrangement, therefore, made by her with the defendant about the property in question (even if proved), not sanctioned by the plaintiff, can be no defence in this action.

The court charged in reply to this point in these words :—

" We cannot answer this point as requested, but say to you that if you find that Mrs. Miller undertook to settle the estate, and pay the debts of her deceased husband, without taking out letters of administration, and that the estate was wholly insolvent, and that in pursuance of that purpose she went on and sold the library in question to the defendant McAlarney, and gave him possession of it, and that he has paid or been ready and willing at all times to comply with the terms of sale as thus made, and if you find further that Mrs. Miller paid debts largely in excess of any amount that came into her hands from the estate, and has since paid to the present plaintiff more than twice the amount or value of the library, as appears by the administration account, then we instruct you that there can be no recovery in this action."

The general charge was summed up as follows :—

" [You will determine as to the solvency of the estate, and whether Mrs. Miller was acting in good faith knowing it to be largely insolvent. Nobody could complain of that ; the heirs could not com-

[Roumfort *v.* McAlarney.]

plain; and if it was all done fairly and honestly, there is no reason why the arrangement she made, with that motive, with that purpose in view, could not be carried out. The law will carry it out, and the law will enforce it. Then if you find that to be the state of facts, we instruct you that the plaintiff cannot recover; and that your verdict should be for the defendant.]"

Verdict for defendant and judgment. Roumfort took this writ of error, assigning for error (1) the answer to the plaintiff's point, (2) the admission of evidence of a sale of the library by Mrs. Miller to the defendant, (3) the admission of the above settlement in evidence, and (4) the part of the above general charge in brackets.

*H. M. Graydon* and *F. Jordan,* for plaintiff in error.—It was assumed by the court below that the widow was an executrix *de son tort.* Even so she could not pass title to the books: Wylly *v.* King, Georgia Dec., pt. 2, p. 7; Mountford *v.* Gibson, 4 East 441; Woolfork's Adm'r *v.* Sullivan, 23 Ala. 548; Carpenter *v.* Going, Adm'r, 20 Id. 587; Wilson's Adm'r *v.* Hudson, 4 Harring. 168. The acts of an executor *de son tort* are only good when they are such as the true representative was bound to perform: Buckley *v.* Barber, 6 W., H. & G. 162, 183. No part of the proceeds of the alleged sale went to pay the decedent's debts. It has been held that an executor *de son tort* may recoup in damages for payment of debts actually made by him; but only where the estate is solvent: 1 Will. Ex'rs 238; Mountford *v.* Gibson, *supra.* Nass *v.* Vanswearingen, 7 S. & R. 192, is not in conflict with these cases.

The defendant was not an executor *de son tort.* His pleadings do not show such a defence: 1 Will. Ex'rs 232; Padget *v.* Priest, 2 T. R. 99; see also, Wiley *v.* Truett, 12 Geo. 588; Paull *v.* Simpson, 9 Ad. & E., N. S. 365.

The defendant, never having claimed property, is estopped to claim it now: Commonwealth *v.* Moltz, 10 Barr 527; Patterson *v.* Lytle, 1 Jones 53.

*J. W. Simonton,* for defendant in error.—The sale to McAlarney passed title: Weeks *v.* Gibbs, 9 Mass. 77; Nass *v.* Vanswearingen, 7 S. & R. 196; Saam *v.* Saam, 4 Watts 432; Walworth *v.* Abel, 2 P. F. Smith 370. The vendee of an executor *de son tort* is in a better position than his vendor and will be absolutely protected. The question of estoppel was not raised below.

Mr. Justice GORDON delivered the opinion of the court, June 5th 1876.

At and before the decease of William H. Miller, he and the defendant were partners in the law business, occupying the same office, and, as we understand the evidence and the statements of the parties through their counsel, the property in suit remained in the

[Roumfort *v.* McAlarney.]

possession of the defendant until the bringing of the present action, and perhaps until this time. The defence rests solely on the ground of title acquired through the sale by Mrs. Miller. Though Mc-Alarney claims to be a creditor of the decedent, yet it is certainly not law that he can on this ground withhold the property in his hands from the lawful administrator. A creditor cannot be permitted thus to pay himself, to the detriment of the estate: Lomax on Ex'rs 80, 81. Besides this, the defendant's claim is subject to a settlement between himself, as the surviving member of the firm of Miller & McAlarney, and the administrator, and until such settlement occurs and a balance is found in his favor, he has no debt which he can enforce against the estate of his co-partner. As, however, the court below rightly refused to consider this as a legitimate defence, we need pursue the subject no farther. What then was the title which he acquired through Mrs. Miller? If we assume that she is to be regarded as an executrix *de son tort* of her husband's estate; that she took possession of the property in question, sold it to the defendant, received the money and applied it to the debts of the decedent, in such case it might be that we should treat the title as having vested in the defendant; for under such circumstances the property would have passed into a quasi administration which it would be inequitable to disturb. But two important elements in the above proposition are wanting in this case: (1) Mrs. Miller had neither the possession of, nor the right of possession to the property; (2) McAlarney did not pay her for it, and hence there was no administration thereof for the benefit of the estate. Hence, as we have already intimated, the defence must rest solely on the title acquired by the bargain and sale of Mrs. Miller; as, however, she had no title her sale could confer none: Sellers *v.* Licht, 9 Harris 98. That she paid debts of the estate does not help the matter, for in an action against her for the conversion of the goods of the estate, she could not plead the payment of such debts, but would be allowed only to recoup them in mitigation of damages on the general issue: Saam *v.* Saam, 4 Watts 432; Mountford *v.* Gibson, 4 East 441. If, however, we accept the doctrine of Hardy *v.* Thomas, 23 Miss. 544, even this rule of recoupment fails where the action is for property remaining undisposed of in the hands of an executor *de son tort*. This same doctrine is intimated as probable in Buller's Nisi Prius 48. This case, however, does not require us to endorse the rule thus enunciated, for under any view, the defence admitted in the court below fails to bear the test of authority. The plaintiff's point should have been affirmed.

The judgment is reversed and a *venire facias de novo* is awarded.