Lewis Gilfillen's Estate.   H. Jennie Gilfillen's Appeal.

[Marked to be reported.]

*Guardian and ward—Receipt of money of minor by person not appointed guardian—Education of minor.*

Where a grandfather as administrator of his son's estate receives money belonging to his granddaughter, a minor and deaf mute, and spends the whole fund in having the child taught to speak and to hear, he cannot be ·compelled to account for the fund, although he was never appointed guardian of his granddaughter's estate; and it is immaterial in such case that the grandfather, as administrator of his son's estate, could not have been appointed guardian of his son's daughter.

A guardian is entitled to credit for moneys taken from the principal of the ward's estate, and used in teaching the ward, a deaf mute, to speak and to hear.

*Evidence—Gift—grandfather and grandchild.*

A grandfather received from a son's estate certain moneys belonging to his son's daughter. He kept an account showing the amount which he held in his hands for the granddaughter, and also entries showing payments for her teaching and schooling, amounting in the aggregate to a sum largely in excess of the amount which he had received. A witness testified that the grandfather had shown him the account, and told him that he intended that the charges should be an offset against the amount due his granddaughter. *Held,* that the evidence was sufficient to sustain a finding that the payments made on account of the granddaughter's schooling were not intended as a gift.

Argued May 28, 1895.   Appeal, No. 36, July T., 1895, by H. Jennie Gilfillen, from decree of O. C. Perry Co., Nov. T., 1894, No. 22, discharging rule to show cause why certain money should not be paid to H. Jennie Gilfillen.   Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ.   Affirmed.

Rule on executors of Lewis Gilfillen to show cause why they should not pay to Jennie Gilfillen the sum of $1,094.36, with interest from Dec. 28, 1875, as her distributive share of the estate of her father, James L. Gilfillen, deceased.

From the record it appeared that James L. Gilfillen died intestate, Oct. 29, 1873, survived only by a minor child, Jennie, and a widow.   After the death of her father, Jennie was the only lineal descendant of her grandfather, Lewis Gilfillen.   Lewis Gilfillen administered the estate of his son, and settled an ac-

count in the orphans' court, Dec. 28, 1875. There was no alle-gation that the estate was not faithfully administered and fully accounted for.

The balance for the widow and child was $1,641.50, of which Jennie was entitled to two thirds, or $1,094.36.

Shortly after the estate was settled Lewis Gilfillen suggested the appointment of a guardian for the child, but no appoint-ment was made; the grandfather, at the solicitation of the mother, consenting to keep the money and take care of the child's interests.

At the death of her father Jennie was a little over a year old and a mute. Owing to her natural defects it became necessary to make special arrangements for her education. Accord-ingly, a specialist in the art of educating through the sense of sight was employed from 1881 to 1885 inclusive, as instructress to the child at her home in Perry county; and during 1890, 1891 and 1892, she was placed in a suitable institution at Philadelphia.

The amount expended by Lewis Gilfillen upon her educa-tion, including a small bill for medical attendance and a few dollars for milk, was $2,050.61.

On April 28, 1893, Lewis Gilfillen died testate, having made, by his will, substantial provision for Jennie. He gave her house furniture to the value of six hundred dollars, also one horse, buggy, sleigh, set of harness, two cows, two hogs, and two head of young cattle and "all the grain and hay in the barn where I live that belongs to me at my death." To the child, jointly with her mother during the latter's widowhood, he gave the income of his two farms. Upon the remarriage or death of the mother, Jennie was to have the sole income of these farms during life; the fee, after the death, to go to her children, should any survive her.

It was claimed that the payments made by decedent for Jennie's schooling were gifts, and certain declarations of dece-dent to this effect were offered in evidence. It, however, appeared that decedent kept an account in which he charged Jennie with various payments made by him. A. H. Ulsh tes-tified as to this account as follows:

" About three months before Lewis Gilfillen's death in his own house he opened his day book, and with other accounts

he showed me the account with his granddaughter, Jennie Gilfillen, and, pointing to the credit, said this is the amount of money in my hands due Jennie from her father's estate subject to guardianship. Pointing to the debtor side, he said, these are the charges I made, and intend them as an offset against the money due her, and further said, they will about cover principal and interest. Before this conversation he showed me a list of all his notes, mortgages and judgments and book accounts, and said likely you will be called on in the near future to look over them. Jennie's account was in the back part of the book, and then he said I will provide for Jennie in the future."

The court, in an opinion by SAVIDGE, P. J., specially presiding, discharged the rule.

*Error assigned* was above order.

*Charles H. Smiley*, for appellant.—An administrator is a trustee for collection and distribution, not for investment, and he is under obligation to use diligence in preparing for distribution: Charlton's App., 34 Pa. 473; Abbott's Executors v. Reeves, 49 Pa. 494; McCandless's Est., 61 Pa. 9; Robinett's App., 36 Pa. 174; Wither's App., 16 Pa. 151; Bile's App., 24 Pa. 335; Bruner's App., 57 Pa. 46.

But it is contended that the administrator discharged his liability to the appellant by having assumed to act as her guardian, and, as such, paid out for her education a larger sum of money than the amount of her distributive share in his hands. The answer is, that he was confronted by the law which expressly prohibited him from acting in that capacity, and any payment made otherwise than to a legally qualified guardian of the minor was illegal and he was not entitled to credit therefor: Act of March 29, 1832, P. L. 191.

In this state it has been declared as the recognized law that a minor should have a guardian appointed, whose duty it is to " keep an eye on the executors " and to " examine the proceedings and ascertain whether the minor's estate is properly secured from the debts of the testator: " Senseman's App., 21 Pa. 331.

One who voluntarily expends money in the support of a lunatic cannot recover for such expenditure, either against the

committee or lunatic. There must be a contract either expressed or implied upon which to found the action. One in the custody of the law, as a lunatic, cannot make an express contract, and the law will imply none : Hehn v. Hehn, 23 Pa. 415.

All the testimony and the proof goes to show conclusively that Lewis Gilfillen was retaining the money due the appellant from him with the intention of paying it to her when she arrived at age with interest, and that he was educating his grandchild as a matter of duty and pleasure without the expectation of fee or reward.

Conceding, however, that he intended to charge his grandchild with the amount above stated, for the sake of argument, then it follows, from his position, having no authority to pay this money, that he was a mere volunteer, and having paid it without duress, his legal representatives cannot now disavow his act and recover the money thus paid: Natcher v. Natcher, 47 Pa. 496; Harvey v. Girard N. Bank, 118 Pa. 212; De La Cuesta v. Ins. Co., 136 Pa. 62.

*James M. Sharon* and *Charles A. Barnett*, for appellee.—It is unimportant whether Lewis Gilfillen was appointed her guardian or not; and the authorities cited by her learned counsel are without application to the facts of this case. When his duty as administrator ended, and at the request of the mother he consented to act as guardian of Jennie, he then became her trustee : Finney v. Cochran, 1 W. & S. 118 ; Lyon v. Marclay, 1 Watts, 275 ; Van Epps v. Van Dusen, 4 Paige, 64; Davis v. Harkness, 1 Gillman, 173 ; Newburg v. Bickesstaff, 1 Vern. 296 ; Yerger v. Jones, 16 How. 36 ; Hipp v. Jolly, 10 How. Law Ed. 278 ; Davis v. Crandall, 101 N. Y. Rep. 311.

A guardian is entitled to credit for the expenses of maintenance and education of his ward: Gochenaur v. Froelick, 8 Watts, 23 ; Shollenberger's App., 21 Pa. 337 ; Smith's App., 30 Pa. 397 ; Eyster's App., 16 Pa. 372 ; Sharpe's Est., 2 Phila. 280.

In trover an executor de son tort for goods of a decedent, may under the general issue give in evidence payment of debts to the value thereof in mitigation of damages : Saam v. Saam, 4 W. 432 ; Roumfort v. McAlarney, 82 Pa. 193.

Trustees de son tort are subject to the same rules and remedies as other trustees : Nass v. Vanswensinger, 7 S. & R. 196 ; 7 Am. & Eng. Ency. of Law, 188.

OPINION BY MR. JUSTICE GREEN, July 18, 1895:

In this proceeding it is attempted, by means of a rule to show cause, to obtain a decree for the payment of money against the estate of Lewis Gilfillen, deceased. If the decedent owed money to the appellant the form of the proceeding would not be objectionable. But if no money is owing by the decedent to the appellant, neither law nor equity could tolerate the decree sought for. The basis of the contention is that the decedent, being the administrator of the estate of the appellant's father, had in his hands at the settlement of his account as administrator, a sum of money belonging to the appellant, who was then an infant, and that this money or any part of it was never, paid by the decedent to the appellant. The amount of the fund was $1,094.36. If the decedent had been the guardian of the appellant he would have been liable to file an account of his trust, and upon the settlement of the account the question would have been whether he had paid out the money in such a way as the law would recognize as proper, and for the benefit and advantage of the ward. If he had he certainly would have been entitled to credit for such payments, and in that event, if the payments exhausted the fund in the guardian's hands, no recovery could be had for the moneys so paid. That is what would have been the result if he had been regularly appointed as guardian, had accepted the trust and had fully executed it. Is any different rule to be applied to the case if he was not so appointed, and yet had acted as such in point of fact, and had faithfully performed his trust? If so the ward obtains a right to have money which she could not have had, if the decedent had held a regular appointment. Such a result is not reasonable and we can see no just cause for reaching it. Now in point of fact the payments made by the decedent during the minority of the appellant, amounted to considerably more than the whole sum of the money which came into his hands, with lawful interest added, and they were of the most humane and beneficent character, such as ought to have been made if he had been regularly appointed as guardian, and such as any

orphans' court having jurisdiction would have authorized him to make, and would in all probability have required him to make, if he had not done so voluntarily. The appellant was born a deaf mute. She could neither speak nor hear. Her condition was most pitiable, and her mother was most anxious that she should receive such education as is given to persons so afflicted. Her grandfather, the decedent, took pity upon her, and yielding to the earnest solicitations of the appellant's mother, and to his own instincts of natural affection, he did have her educated with such excellent results that she was enabled to overcome the frightful afflictions of her birth, and is now able to speak and practically to hear, and her life which otherwise would have been one of dumb misery and sorrow is made tolerable and happy. The question is what was the decedent's position with reference to the appellant, and to what credits would he be entitled upon the adjudication of an account?

In the case of Van Epps v. Van Deusen, 4 Paige (Chan. N. Y. Rep.), 64, the father of the ward without any appointment as guardian received a sum of money belonging to his infant daughter and also appropriated the services of a female slave belonging to her. After attaining her majority upon a bill filed against her father's executor, the estate was held liable to account upon the theory that he could be held accountable as a guardian legally appointed. The chancellor delivering the opinion said, " Although as the mere guardian by nature, he had no right to receive the money due on the bond, or to receive the services of the slave, yet this court will hold him liable to the same extent as if he had been the legally constituted guardian, so far as he has had the benefit of the infant's property. A mere stranger or wrongdoer who takes possession of the property of an infant, and receives the rents and profits thereof, may in equity be considered as the guardian, and may be compelled to account as such. 1 West, 265 ; 2 P. W. 645; 1 Vern. 295 ; 2 Car. L. R. 412.

See also the copious notes to this case as reported in 3 N. Y. Chancery Rep., Lawyers' edition, p. 344.

See also the case of Davis v. Crandall, 101 N. Y. Rep. 311 (Ct. of Appeals), in which the same doctrine was recognized and enforced.

In Davis v. Harkness, 1 Gilman (Ill.), 173, 41 Amer. Dec. 184,

CATON, J., says: " Authorities are not wanting to show that Harris received this money as guardian of these infants, and as such they may claim an account for it if they choose.   In Newberg v. Bickerstoff, 1 Vern. 296, the Lord Keeper observed that Littleton says, if a man obtrudes himself upon an infant he shall receive the profits but as a guardian, and the infant shall have an account." . . . " Upon principle too as well as authority, should the infant be entitled to an account against him as guardian. . . . If he receives the money of the infant, and uses it, he is estopped from denying that he received it as guardian."

In the case of Cary v. Bertie, 2 Vern., on page 343, the Lord Chancellor said, " If a stranger enters and receives the profits of an infant, he shall in the consideration of this court, be looked upon as a trustee for the infant and the like. "

In Hipp v. Babin, 19 How. 271, it was said in the opinion, "There are precedents in which the right of an infant to treat a person who enters upon his estate with notice of his title, as a guardian or bailiff, and to exact an account in equity for the profits, for the whole period of his occupancy, is recognized. (Bloomfield v. Eyre, 8 Beav. 250 ; Van Epps v. Van Deusen, 4 Paige, 64.) "

We are not aware of any decisions of this court which are in conflict with the foregoing authorities, or with the principles upon which they were determined.   The proposition that because an administrator or executor cannot be appointed guardian of a minor interested in the estate of which he has charge, he, therefore, cannot be treated as a guardian in fact, is altogether untenable.   Treating an administrator who has acted as a guardian of such a minor, as if he were actually appointed as such, means only holding him to such liability as he would have incurred if he had been really appointed.   This judicial treatment of such a person is the most favorable to the interests of the ward, but it certainly does not follow that if such a person makes payments out of the funds which belong to the ward, for the best interests of the ward, such as any court having jurisdiction would allow or direct him to make, he is to be denied all credit for such payments.

Even executors de son tort are entitled to have credit for valid debts of the decedent actually paid by them out of assets

upon which they have intruded: Saam v. Saam, 4 Watts, 432; Roumfort v. McAlarney, 82 Pa. 193.   In the latter case we said, GORDON, J., "If we assume that she is to be regarded as an executrix de son tort of her husband's estate; that she took possession of the property in question, sold it to the defendant, received the money and applied it to the debts of the decedent, in such case it might be that we should treat the title as having vested in the defendant; for under such circumstances the property would have passed into a quasi adminstration which it would be inequitable to disturb."

In Am. & Eng. Ency. of Law, vol. 7, p. 189, it is said, "All proper and lawful acts done by an executor de son tort are binding upon the estate, if the rightful executor or administrator would have been bound to do likewise in due course of administration."

It is contended by the appellant that the money expended by the decedent for her special instruction was a gift, for which he had no intention to charge her estate, and therefore he can have no credit for such payments.   Evidence was given of some loose declarations of the decedent indicative of such a purpose, but other and much more satisfactory evidence was given showing that he did not have such an intent.   Amongst other things he kept a precise account on his books showing the date and amount of every such payment made by him, and also the amount he held in his hands of money belonging to her.   The heading of this account on his books shows the intent with which he regarded his own position with reference to this subject.   It is as follows:

### LEWIS GILFILLEN. DR.

"1876   January 1st.   The amount due Jennie Gilfillen and subject to Guardianship from Lewis Gilfillen, Adminstrator of James Gilfillen, deceased, the amount is Ten hundred and ninety four dollars and thirty six cents.

### PAID FOR JENNIE GILFILLEN.

"1876   Nov. 1st.   Paid Samuel Stites for Medical attendance $21.00; Paid Miss Patterson for Milk $11.81; Paid Miss Plympton for teaching 11½ months $383.30.

And then follow a number of similar entries of payments for teaching and schooling at Philadelphia to May 28, 1892; the aggregate of all the payments being $2,050.61.

These entries are entirely inconsistent with the theory that he intended the payments as gifts. His declarations to A. H. Ulsh, made a few months before his death, and in a much more impressive and solemn manner than the adverse loose declarations, were conclusive that he intended the payments not as gifts but as charges against the fund in his hands. This contention was made in the court below, and there a special finding was made, as follows : " We therefore find as a fact that the education was not a gift, and that the guardian is entitled to a credit for the expenses thereof." We treat this finding as we would the verdict of a jury, and we also think it was a correct finding upon the testimony.

There is nothing left of the case but the question of the propriety of the payments made for the appellant's education, and there seems to be little or no contest upon that subject.

In Eyster's Appeal, 16 Pa. 372, we held that where a guardian permitted the rents of a small property to be received by the widow, and the share of the ward in the rents to be applied by her to the maintenance and education of the ward, who was her son and was residing with her, the guardian is not accountable to the ward for the rents, the said rents not being an unreasonable provision for the purpose.

In Smith's Appeal, 30 Pa. 397, we held that a guardian was entitled to credit for moneys advanced to his ward to enable him to complete a medical education.

In Shollenberger's Appeal, 21 Pa. 337, WOODWARD, J., said, " These authorities are sufficient to show that courts of equity do not disregard the claims of guardians when just and well founded. It is a salutary jealousy with which the law regards the conduct of guardians; but where they have advanced moneys to educate their wards—to pay off incumbrances, or to repair and improve their estate, and where the advancements have not been imprudently made and are not disproportioned to the value of the estates, natural justice demands that they should be reasonably compensated."

We regard these rulings as fully applicable to the present case. We do not see how any orphans' court having jurisdiction could refuse to give the guardian authority, upon a petition presented for the purpose, to expend the whole fund in hand, if necessary, to extricate the ward from her fearful condi-

tion. This decedent not only did that, but he expended nearly twice as much as the principal, and considerably more than the principal and interest combined would be, and then closed his relations with her by giving her by his will about everything he could give her consistently with a reasonable provision for the support of her mother, who was his own daughter. If she marries, she and her children will take the whole estate of the decedent in due time, and if she remains single she will have the whole income of the estate for life upon the death of her mother. The decree of the court below is affirmed and appeal dismissed at the cost of the appellant.