GEORGE B. CALNAN, *Administrator*, v. C. H. SAVIDGE, *Guardian*.

**No. 13,358.** (75 Pac. 1010.)

SYLLABUS BY THE COURT.

1. EXECUTORS AND ADMINISTRATORS—*Exceptions to Annual Settlement—Appeal—Burden of Proof.* Where exceptions have been taken to items in an annual settlement of an administrator's account after they had been allowed by the probate judge, and the probate court adheres to its former ruling, and the party excepting appeals to the district court, the allowance of the probate court is *prima facie* correct, and the burden of showing its incorrectness is upon the party who appeals.

2. ———— *Purchase of Necessities for Minors Having no Guardian.* An administrator who in good faith pays money for the purchase of necessities for the support of helpless minor children of the intestate at a time when they have no guardian, the purchases being such as a guardian would have made if one had been appointed, cannot be made to respond again in an action by a guardian thereafter appointed.

3. ———— *Liable to Heirs for Money or Property Lost to Estate.* An administrator is liable to the heirs of the deceased for money or other property that came into his hands which, through his act or omission, has been lost to the estate.

Error from Brown district court; WILLIAM I. STUART, judge. Opinion filed March 12, 1904. Reversed.

*Ryan & Ryan, C. W. Reeder,* and *C. A. Calnan,* for plaintiff in error.

*Buckles & Pearl,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: On December 19, 1897, L. A. Williams died intestate, in Brown county, leaving a widow and three minor children. Shortly after his death another child was born to his widow, and since the commencement of the present action one child has died. At the time of his death L. A. Williams and his family were

residing upon eighty acres of land in Brown county, as a homestead. It was purchased by Williams under a contract, subject to a mortgage of $1000. There was also a balance due on the purchase-price of about $218.30. George B. Calnan was appointed administrator of his estate. After setting apart that portion of the personal property which was exempt to the widow, the administrator sold the remainder and collected notes and insurance aggregating $1590.50, with which he charged himself in his first annual settlement. The administrator was the deceased's family physician, and as such served the widow and children until his bill amounted to $116, which amount he charged to the estate in his settlement. During the time the estate was in course of settlement, the administrator furnished money from time to time to the widow and minor children to purchase the necessities of life. At the time of final settlement he had exhausted all the funds received from the sale of the intestate's property. Prior to his final settlement he had made two annual settlements, in which he charged the estate with the money he had advanced for the support and maintenance of the family. The administrator took a receipt from the widow for every item of money paid. These receipts were filed with his accounts, which were allowed at each annual settlement.

The widow and family moved from the farm, and it was rented by the administrator. The rents were collected and applied to the payment of the interest on the mortgage, taxes, and some slight repairs which were necessary on the farm. The administrator also paid from the receipts of the estate $218.30, the balance due on the purchase-price of the farm.

After the family had removed from the farm, the

widow concluded to trade it for five acres of im-
proved land near the little town in which she lived.
Finding that she could not make a title to the land,
she requested the administrator and probate judge to
have the farm sold, apply the proceeds to the payment
of the mortgage, and invest the remainder in the tract
of land she desired. With this in view, after consult-
ing the probate judge, the administrator made appli-
cation in the regular way for the sale of the farm.
Notice was given, as required by an order of the pro-
bate court, and, upon a hearing, an order was made
authorizing the administrator to sell the farm. The
trade which had been negotiated by the widow was
consummated. In this trade the land was valued at
$2400, less the $1000 mortgage, and the five-acre tract
at $2000; $600 was paid by the widow out of her
own fund; $1400 was the actual consideration re-
ceived from the sale of the land. The administrator
reported the sale to have been made for $2400, less
the $1000 mortgage, and charged himself with $1400
cash, for which he filed the receipt of the widow, and
was given credit therefor. The sale was confirmed and
the deed executed and approved. It was known by
the probate judge and the widow that no cash had been
received. Immediately upon the consummation of
this transaction, the widow, with her family, moved to
the five-acre tract. On November 8, 1900, the admin-
istrator made final settlement of the estate and the rec-
ord shows that he was discharged.

Prior to this time the plaintiff had been appointed
guardian of the minor children. On the day of the
final settlement the judge entered upon the record
the fact that it had come to his knowledge that some
of the heirs desired to contest some of the charges al-
lowed against the estate. He ordered that the heirs

be given fifteen days in which to file a list of such items.   On November 20, 1900, the guardian filed in the office of the probate court exceptions to the greater portion of the items charged against the estate by the administrator in his settlements.   Upon this application the cause was heard in the probate court on December 29, 1900, and the objections disallowed, from which order the guardian appealed to the district court.   When the cause was reached for trial in the district court the question upon whom rested the burden of proof arose.   The court held that it was upon the administrator.   To this the administrator objected and excepted.   After the trial the court made numerous findings of fact, among which are No. 6 and a part of No. 18, as follows :

"No. 6.   After the widow moved from the farm or homestead said G. B. Calnan continued to give the family medical attention from time to time, when called upon so to do, and when the same was necessary, until his bill for such services amounted to $116.50.   These services were reasonable and necessary, and the bill therefor was examined and approved by said widow.   The widow purchased food and clothing, fuel and medicine, for the use of and which was necessary for herself and said children, and which was used by them from time to time, and the bills therefor, after she had examined them, were, at her request, paid by said administrator and credited to himself in his account as administrator.   He also paid the widow, for the purpose of purchasing necessaries for her use and that of the children, money from time to time, which she used for that purpose, and which the administrator took credit for in his accounts."

"No. 18.   The amount paid by said administrator to Mrs. Williams and for her, except that paid to Doctor Pontius, was, with the exception of a small amount of about ten dollars, used by the said widow for the benefit of herself and said minor children, and the amount

so used was necessary for their support and maintenance, and was paid in good faith by said administrator. Receipts were taken by the administrator from the parties to whom he paid amounts as aforesaid, and receipts were taken from Mrs. Williams for herself and children, covering the amounts paid her by the administrator, including the amounts paid Doctor Pontius, and the $1400 reported as the proceeds of the homestead.''

Notwithstanding these findings, the court ordered the sum of $586 charged back to the administrator, and also $700, or one-half the amount of cash the administrator reported as having been received from the sale of the land, and remanded the cause to the probate court with instructions to enter such orders. To reverse this order and judgment the administrator prosecutes this proceeding.

The first error of which complaint is made is that the burden of proof was cast upon the administrator. To determine this question, reference must be had to the force given in such proceedings to the order of allowance made by the probate court in the annual settlements made by the administrator. It has been generally held that such annual settlements are judicial in their nature and that the probate court hears, weighs and determines the correctness of such acts as a judicial officer, and the order of allowance is in its nature a judicial determination, not final, but *prima facie* evidence of the correctness; and if objections are afterwards made thereto, the burden of showing the incorrectness of such determination is upon the party making the objections. (*Musick v. Beebe, Adm'r*, 17 Kan. 47; *Young v. Scott*, 59 id. 621, 54 Pac. 670.)

It is contended that, notwithstanding the $586 was paid in good faith and for the support and maintenance of the helpless minor children of the deceased, and actually necessary for their support, the adminis-

trator is answerable over again to them therefor. Conceding that which all will concede, that it is the duty of an administrator to preserve all funds belonging to the estate, and that no excuse will be accepted from him for money wasted, should he be made to respond a second time to the heirs for money advanced for their support?

At the time of the death of the father of these children, the oldest was eight years of age and without means of support except that which came into the hands of the administrator. They had no guardian. It would be very unnatural if, under such circumstances, the administrator would refuse to advance money to these helpless minor children sufficient to clothe, shelter, feed and educate them. If a guardian had been appointed and the money had passed into his hands, what less could he have done? His duty would have been to advance such money as was necessary. The administrator having performed these duties in good faith, it would be hard to suggest any reason in equity why he should be required to respond again. It would be a very great injustice to charge the administrator with this property as on hand, when he had actually and in good faith expended it for the benefit of these heirs in purchasing for them the necessities of life. In *Gilfillen's Estate, Gilfillen's Appeal,* 170 Pa. St. 185, 32 Atl. 585, 50 Am. St. Rep. 760, it was said:

"Where a grandfather as administrator of his son's estate receives money belonging to his granddaughter, a minor and deaf-mute, and spends the whole fund in having the child taught to speak and to hear, he cannot be compelled to account for the fund, although he was never appointed guardian of his granddaughter's estate; and it is immaterial in such case that the grandfather, as administrator of his son's estate, could not have been appointed guardian of his son's daughter."

On page 191 it was said :

"Treating an administrator who has acted as a guardian of such a minor as if he were actually appointed as such, means only holding him to such liability as he would have incurred if he had been really appointed. This judicial treatment of such a person is the most favorable to the interests of the ward, but it certainly does not follow that if such a person makes payments out of the funds which belong to the ward, for the best interests of the ward, such as any court having jurisdiction would allow or direct him to make, he is to be denied all credit for such payments."

In *Rogers v. Traphagen*, 42 N. J. E. 421, 11 Atl. 336, the court stated the law applicable to this case as follows :

"An administrator, after settling his final account, held in his hands the distributive shares of two infants for whom ( no guardian having been appointed ) he had made disbursements from time to time, both before and after the passing of his final account.

" On a bill filed by the children after arriving at their majority against the administrator for an account, it is held that while the payments should regularly have been made only to a guardian, yet, in the absence of bad faith, such disbursements as would have been approved, had they been made by a guardian of the infants, will be allowed to the administrator."

From what has been said, this cause must be reversed for further proceedings. There are some questions concerning the sale of the farm for which the court below charged the administrator with $700. If, upon a retrial of this cause, it should appear that such money has been wasted to the heirs by the unauthorized acts of the administrator, the heirs should recover for all such proceeds so lost to them.

The judgment of the court below is reversed and the cause remanded for retrial.

All the Justices concurring.