No. 29,119.

F. C. WOODBURY, Executor of the Estate of Mary Ann Shintaffer, Deceased, *Appellant*, v. E. W. SCHOFIELD, Administrator C. T. A. of the Estate. of Mary Ann Shintaffer, Deceased, *Appellee*.

(292 Pac. 802.)

Opinion filed November 8, 1930.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove,* all of Topeka, and *F. M. Pearl,* of Hiawatha, for the appellant.

*Walker F. Means, Lloyd S. Miller,* both of Hiawatha, and *John C. Mullen,* of Falls City, Neb., for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal by an executor from an order of the probate court, which was affirmed, with a modification not now important, by the district court on appeal, requiring the executor to pay over to his successor a sum representing the money or value of certain property which was, or should have been, in his hands as executor. The legal question presented is whether there is evidence sufficient to sustain the judgment and order of the court below based upon the lack of good faith of the executor in handling the funds of the estate.

The appeal questions the judgment of the lower court on two items only. As showing the items appealed from, the record may be stated thus: Mary Ann Shintaffer, a resident of Brown county, died May 4, 1927, leaving a will. The terms of the will are not in controversy and need not be stated. F. C. Woodbury was appointed executor of her estate. At the time of his appointment, and for several years prior thereto, F. C. Woodbury was the president and an active managing officer of the Citizens State Bank of Sabetha. He filed an inventory showing that there had come into his hands as such executor five time certificates of deposit which had been issued by the Citizens State Bank of Sabetha to the testatrix

amounting, in the aggregate, to $5,650, and three promissory notes payable to the testatrix—the R. R. Spring note for $500, the F. M. McMahan note for $1,000, and the Will Bestwick note for $1,000, and as "due the said estate from the J. K. Shintaffer estate, $1,443.56." J. K. Shintaffer was the husband of the testatrix. His death had preceded hers and his estate was about to be closed. The Citizens State Bank of Sabetha closed its doors March 21, 1928, and for several months thereafter F. C. Woodbury was absent. On July 17, 1928, the probate court made an order removing F. C. Woodbury as executor of the estate and appointing E. W. Schofield as administrator with the will annexed, and directing the executor, F. C. Woodbury, to file his final account. On December 5, 1928, F. C. Woodbury filed his final account, in which he charged himself with cash received on the five time certificates of deposit, with some interest received on each, and on two of the notes, and took credit for disbursements made, and showing a balance of cash in his hands of $4,975.55. His final account also reported the three promissory notes as being on hand. It did not show the receipt by him of $1,443.56 from the J. K. Shintaffer estate, which a receipt in that estate showed had been paid to him. The probate court examined the final account, found the same to be unsatisfactory and, after a hearing, ordered the executor to pay to the administrator the $4,-975.55 shown to be in his hands as cash, and the further sum of $1,443.56 which he had collected from the estate of J. K. Shintaffer, and the further sum of $2,500 with interest, representing the amount of the three promissory notes. From this order the executor appealed to the district court, where a hearing was had before the court. At this hearing the executor tendered to the administrator the three promissory notes. The administrator accepted the R. R. Spring note and the F. M. McMahan note, but declined to accept the Will Bestwick note. The hearing in the district court developed that the executor had opened an account in the Citizens State Bank of Sabetha in the name of F. C. Woodbury, executor of the Shintaffer estate, in which had been deposited the amount of the time certificates of deposit, interest items received, and a small balance in the account of Mary Ann Shintaffer at the time of her death, and that this account had been drawn upon so that at the time of the failure of the bank, March 21, 1928, there was a balance in the account to the credit of said executor of $2,116.07. After hearing the evidence the district court made an order and judgment that the

executor pay over to the administrator $4,975.55, balance cash on hand as shown by his final account, the $1,443.56 which he had received from the J. K. Shintaffer estate, and $1,000, the face value of the Will Bestwick note, with interest. From this order and judgment the executor has appealed.

In this court the appellant acquiesces in the judgment of the district court in so far as it relates to the item of $1,443.56, which he had collected from the J. K. Shintaffer estate, and in $2,859.48 of the balance of cash on hand as shown by his final account, and presents for review only that part of the judgment ordering him to pay the $2,116.07 shown by the books of the Citizens State Bank of Sabetha to be on deposit to his credit at the time the bank failed, and the $1,000 face value and interest of the Will Bestwick note. As to these items appellant contends that he could be charged with them and required to pay them in cash only in the event the evidence disclosed he handled those items in such a way that he could be charged with bad faith and so as to result in a loss to the estate, and contends that the evidence does not support a judgment based on such lack of good faith.

There is no serious controversy over the basic principle of law applicable to the case, which may be stated thus: An executor is not an insurer of moneys and properties of an estate which come into his possession, but with respect to such property he is a trustee, not only for the benefit of the creditors of the estate, but of heirs, devisees, or legatees. As such trustee he is bound to use, as some of the authorities state, the utmost good faith. Others state he is bound to use ordinary care, but when used in that sense it means the ordinary care of a prudent, conscientious man who receives property in that position of trust. He can deposit money which comes into his hands, and should do so, and if he uses good care in the selection of the depository the fact that it failed will not render him liable; but if he places the money on deposit in a depository which he knows, or has good reason to believe, is unsound and in a failing financial condition, and leaves it there until the institution fails, he is liable. He has no authority to use the money for his own financial needs or to bolster the failing financial condition of a bank or other institution with which he is connected. He should use due care in collecting moneys due the estate, and should account for those collected. (24 C. J. 123; 11 R. C. L. 133, 134; *Calnan v. Savidge,* 68 Kan. 620, 75 Pac. 1010; *Bank v. Grisham,* 105 Kan. 460, 185 Pac. 54; *Alumbaugh v. Hedges,* 125 Kan. 449,

453, 265 Pac. 50; *Beck v. Wacker,* 127 Kan. 9, 272 Pac. 175, and cases cited in support of these authorities.)

The evidence discloses that for perhaps a year before the bank failed its president, F. C. Woodbury, knew that the bank had $75,000 to $100,000 "frozen assets," consisting, in part at least, of notes secured by second mortgages on real estate, with the market value of real estate constantly declining. The bank examiners had made requirements with a view of improving the financial condition of the bank, only a part of which the officers of the bank had been able to comply with. They had made special trips to the bank commissioner's office at Topeka with respect to those requirements. F. C. Woodbury had personally made two such trips. The embarrassed condition of the bank became known to some of its patrons, resulting in the withdrawal of some deposits. In about three weeks before the bank closed about $75,000 in deposits had been withdrawn. Soon after F. C. Woodbury was appointed executor of this estate he cashed one of the certificates of deposit for $1,300 in order to have funds to pay doctor and nurse bills, funeral expenses, taxes, and other items of expense incident to the administration of the estate. The one time certificate so cashed produced sufficient funds for this purpose, and no other claims were filed against the estate. In October, 1927, the executor cashed the other four interest-bearing time certificates of deposit and placed the proceeds in the Citizens State Bank of Sabetha in his account as executor, and on the same day drew $2,000 of the account, which the evidence tends to show was deposited, $1,000 to the credit of the account of Mrs. Harry West at that bank, the deposit slip indicating that currency was deposited, and bearing the notation, "Bonds Nos. 38 and 39, original, received by A. L. Moyer," and that the other $1,000 was deposited to the credit of the account of Mrs. Ida Lewis, the deposit slip indicating that currency was deposited, and bearing the notation, "Bonds Nos. 40 and 41, original, received by A. L. Moyer." We do not find evidence explaining these notations in the record. The face of them would indicate that the deposits were made for bonds, either previously or then taken from those accounts, and delivered to or used for the benefit of A. L. Moyer. On January 3, 1928, F. C. Woodbury, president of the Citizens State Bank, issued a cashier's check, payable to F. C. Woodbury, for $850, the amount of which was charged to his account as executor of the Shintaffer estate. The specific use made of this $850 cashier's check is not shown, but it is clear it was used

for the personal benefit of F. C. Woodbury, or the bank of which he was president, and that it was not used in any way for the benefit of the estate for which he was executor. Neither of these withdrawals from the account as executor was authorized by the probate court, or even reported to it. The final account of the executor made no mention of such use, but reported those amounts, as well as the balance shown by the bank books, to be to his credit as executor as cash on hand.

With respect to the Bestwick note, the evidence showed that this note was a few months past due when the executor was appointed. Bestwick owned two farms. He owed other indebtedness and wanted to sell one of the farms and pay his debts. Sometime in the fall of 1927 he sold the farm, received some cash, the amount not shown, in payment and received from the purchaser a note for $6,000 secured by a mortgage on business property. Woodbury was familiar with that sale and the terms of it. Bestwick left the $6,000 note and mortgage with Woodbury to be sold, the proceeds to be turned over to Bestwick, which he intended to use in paying this $1,000 note to the Shintaffer estate and other debts which he owed. It seems that a Mrs. Estella Macheter had previously purchased some notes from the Citizens State Bank of Sabetha, the payment of which had been guaranteed by the bank, or by Woodbury as president, and with which she was dissatisfied. Woodbury told her about this $6,000 note which Bestwick owned and she said she would take that in lieu of the other notes she held, and possibly this required the payment of some additional money by her. Woodbury's testimony as to this transaction leaves much to be desired in the way of certainty, but he was willing to let her have this $6,000 note, and he planned to get the $6,000 to pay Bestwick from Jake Marmet (Norman), "and Colonel Brinkworth was to come in and put it to Norman's credit," and this was to be turned over to Will Bestwick. What Woodbury planned to give Jake Marmet (Norman) or Colonel Brinkworth for the $6,000 they were to put up to be turned over to Mr. Bestwick is not disclosed. It is sufficient to say that part of the deal never went through. But Mrs. Estella Macheter did get the $6,000 note. Mr. Bestwick did not get anything, and the executor did not collect the $1,000 note which Bestwick owed to the estate. It is clear, therefore, that the executor failed to collect the Will Bestwick note due the estate notwithstanding the fact that he had good opportunity to do so, and in

fact used the $6,000 note belonging to Bestwick to relieve the bank of its embarrassment because of the previous dealing with Mrs. Estella Macheter. The transactions concerning this matter had been going on for some months before the bank closed, hence it was competent for the court to consider all of this in connection with the question whether or not the executor had used good faith in cashing the certificates of deposit and placing them to his credit in the bank. From the whole it is clear that there is ample evidence to support the judgment of the court predicated on the lack of good faith, or ordinary care, on the part of the executor. It is true there was testimony from two witnesses who had money on deposit in the bank to the effect that they regarded it as a safe place to keep their money, had heard of no adverse rumors concerning the unsoundness of the bank, and had money on deposit there when it closed. It is not unusual for that to be true of any bank when it fails. But these persons were not officers of the bank, in the active management of its affairs, with actual knowledge of its embarrassed financial condition, and the fact that its officers were shifting funds from one account to another, or using trust funds of an estate to relieve it temporarily of financial stringency. It is also true that the daily balance of the bank showed a fluctuation which a witness testified was nothing more than normal, and the executor himself testified that up until a few days before the bank closed he did not realize the seriousness of its condition. But the trial court weighed this evidence and gave to it such force as in its judgment it was entitled to receive. We examine the evidence only to see if there was sufficient substantial evidence to sustain the judgment, and on this point we are satisfied there was.

Since this case was submitted to this court there has been filed here an instrument tending to show that William Bestwick had in some way obtained possession of the $6,000 note heretofore mentioned, and has filed an action on it in the district court of Nemaha county. This additional showing cannot be considered here, as we must determine the case from the record made in the trial court, except in the few exceptional circumstances which are not here present. The appellant, of course, on paying the judgment appealed from will perhaps not be without remedy in so far as the Bestwick note held by the estate is concerned. But that is a question which cannot be determined in this appeal.

The judgment of the court below is affirmed.