SAMUEL BROWN v. HATTIE E. BROWN *et al.*

No. 11,784.    (64 Pac. 599.)

1. FRAUD—*Limitation of Action.* In an action to set aside a deed on the ground of fraud, the cause of action will not be deemed to have accrued at the time of the delivery of the deed, but at the time of the discovery of the fraud by means of which the grantor was induced to execute and deliver the same.

2. ——— *Parties to Action—Widow and Child.* Where such deed was executed by husband and wife, and where the former died before the action was brought, a child born subsequently to the delivery of the deed is a proper party to such action, and may be joined with the widow as plaintiff therein.

3. ——— *Equity Does not Look to the Form Alone.* Equity does not look alone to the form of a transaction by which a fraud is perpetrated. If the measures resorted to were adopted with the intent of practicing a deception upon a particular person, if, under the circumstances, they were all adapted to achieve such result, and if they did accomplish the unlawful purpose sought to be attained, then the fact that the words used in furtherance of such unlawful object were not directly addressed to the person designed to be defrauded, in whose presence they were thus spoken, or that such words, if employed in good faith, would ordinarily import a negotiation, does not render the fraud thereby effected unassailable by action.

4. ——— *Admissions of Real Party in Interest.* In an action against one who asserts that he is only a nominal party, and' that another is the real party in interest, the former cannot be heard to complain if, on the trial, the court permits the admissions of such real party in interest, relating to the subject in controversy, to be given in evidence.

Brown v. Brown.

5. ―――― *Presumption of Intention — Trust not Inferred.*
Where a son purchases a farm with funds furnished to him by
his mother for that purpose, and takes title in his own name,
without any agreement or understanding as to how the title shall
be taken, or as to any interest of the mother in the land, and
when the mother, with full knowledge of the facts, speaks of and
treats the farm for many years as belonging to her son, and makes
no complaint to him or to others regarding the title, but acquiesces
in that which has been done, it will be presumed, after the death
of the son, that the deed conformed to the intention of the parties,
and a resulting trust in favor of the mother will not be inferred.

Error from Marion district court; O. L. MOORE,
judge. Opinion filed April 6, 1901. *In banc.* Affirmed.

STATEMENT.

THIS action was brought on November 4, 1898, by
Hattie E. Brown, widow of Van Voorhis Brown, deceased, and Karl Power Brown, an infant son of said
Van Voorhis Brown and the plaintiff Hattie E. Brown,
to set aside and cancel a warranty deed made by Van
Voorhis Brown and wife to Samuel Brown on May
17, 1894. Van Voorhis Brown was the son of Joseph
and Emaline Brown, who, in 1884, lived in Pennsylvania. The family consisted in part of said Joseph
Brown, Emaline, his wife, and their sons, Van Voorhis, Samuel, Curtin, and Joseph, jr. Van Voorhis,
the eldest son, came to Kansas about the year 1884,
and in the fall of that year found a quarter-section of
land for sale, and wrote to his father about it. The
father wrote in answer that if the farm could be
bought for $3000 his wife had that amount of money
on hand, and would send it to the young man, so that
he could buy the farm. The son afterward persuaded
the owner of the land to reduce the price, and wrote
to his father that he could get it for $3000. Thereupon the father sent him the money, which belonged

to the mother, and with it Van Voorhis bought the land, taking title in his own name. It was not suggested that the title to the farm should be taken in any other name than that of the son, nor was anything said with reference to the money's being loaned to the son. No complaint was ever made by the parents that the son had done wrong in taking title to the land. It is in evidence that the father and mother intended to buy each of their sons a farm, and it is probable that the placing of the title in the son was in accordance with their desire, if it was not done at their express direction.

About the year 1885 the father came to Kansas and began living with his son upon the farm. The house was enlarged, some other improvements undertaken and finished, and later the entire family came to live on this farm, continuing to reside there until the year 1890, when Joseph Brown and wife removed to Peabody, where they have ever since resided. After the father and mother removed to Peabody, the son, Van Voorhis Brown, continued to reside on the farm, and on August 22, 1893, he was married to the plaintiff, Hattie E., in Pennsylvania, and immediately after their marriage they came to Kansas and together lived upon the farm as their homestead up to the time of the death of Van Voorhis Brown, which occurred on July 24, 1898.

For some unknown reason the members of the Brown family were not fond of the plaintiff Hattie, who seems to have belonged to a different type, and to have entertained opinions somewhat different from theirs. The Brown family was in good circumstances, and complaint was made that Hattie was not possessed of any property of her own, and came from a poor family. It is not pretended by any one that

she did not well discharge her duties as wife of Van Voorhis Brown, but the early prejudice against her on the part of her husband's family seems never to have disappeared.  Within a few months after she came into the family, it was determined by Emaline Brown and her son Samuel that measures should be taken to divest the wife of Van Voorhis of the interest she had acquired in the farm by virtue of becoming his wife.

Probably because she realized that she was not well liked by her husband's family, the plaintiff Hattie, within a short time after moving on the farm, became anxious to have her husband sell out, move off the farm, and engage in some other business.  It was shown that he talked about removing to Newton to go into the livery business, and she was quite willing to have him do so.  This fact was taken advantage of by the family to accomplish their purpose in getting from her a deed to the land.  Therefore, it was secretly agreed that the title should be placed in Samuel Brown, who was married, but whose wife was at that time in Pennsylvania.  With that end in view, Samuel Brown came to the house of Van Voorhis, and in the presence of the plaintiff Hattie, canvassed the desirability of Van Voorhis's selling the farm and moving to some neighboring town, and finally, in her presence, he offered to take the farm and pay the amount which his brother asked for it.  It was then and there agreed between the two brothers that the farm should be sold to Samuel for $4500, to be paid in instalments, and that Van Voorhis was to move away.  Pursuant to this arrangement, as the wife understood, the deed was soon thereafter executed by the husband and wife, and delivered to Samuel, who then went back to Pennsylvania, and soon after wrote that his wife was

sick, as she probably was, and postponed the time of coming on, and finally, when she did come, the following spring, it was given out that she did not want to live so far from town, and, therefore, the father, Joseph Brown, bought Samuel another farm, and Samuel notified the plaintiff and her husband that he would give up their farm. The plaintiff Hattie made no inquiry about the matter, but assumed that the deed was given up when Samuel decided to abandon the trade. From that time forward until his death, Van Voorhis Brown continued to run the farm as usual, and at the time of his death it was well stocked.

The child Karl Power Brown was born March 21, 1897.

A few days before Van Voorhis Brown died he was removed to Peabody, that he might have medical attendance. He died there, and the next day after the funeral the plaintiff in error and other members of his family took the widow out to her home, and informed her that there was "nothing there for her," and induced her to pack up her personal wearing apparel in great haste, bought her a ticket to Pennsylvania, and, without giving her an opportunity to confer with her nearest neighbor, put her on the cars and sent her away.

The action was tried to the court below without a jury, and on its own motion the court made certain special findings of fact which sustained the claim of the widow and child, and a decree was entered in their favor, setting aside and canceling the deed made to Samuel Brown, who brings the case here for review.

*R. L. King*, and *C. M. Clark*, for plaintiff in error.
*Keller & Dean*, for defendants in error.

Brown v. Brown.

The opinion of the court was delivered by

ELLIS, J.: The plaintiff in error insists that the statute of limitations had run against plaintiff's action before this suit was instituted, and having raised that issue in his answer in the court below, he now assigns the failure of the court so to find as one of his principal grounds of error. We do not think the position is tenable. The evidence shows, and the court below found, that the plaintiff widow had no notice or knowledge that the apparently formal and businesslike offer and undertaking of Samuel Brown to buy the farm was, in fact, but a rehearsal by him of a farce, until after the death of her husband. The representations then and there made by Samuel Brown constitute the fraud complained of. It does not appear, and is not vitally important, to what extent Van Voorhis Brown participated in the fraudulent intent of Samuel, though the court below found that he joined in the effort to procure the deed, knowing that the pretended consideration of $4500 was not to be paid by his brother. Of course, the widow knew that the deed was delivered in 1894, but at that time she believed, and had a right to believe, that her brother-in-law had bought the farm. Afterward, when he announced that he would give up the farm, in view of the relationship of the parties, we think she had a right to assume that no attempt would be made to assert title under the deed, and that the same would be surrendered or destroyed. Be that as it may, she had no notice or knowledge that the conversation had in her presence and the words spoken by her brother-in-law constituted but the enactment of a play to deceive her, until she was suddenly and ruthlessly apprised of it in a most heartless and un-

feeling manner, at a time when she was grief-stricken and bowed down with a much greater affliction. Within a few hours after her husband had been laid in his grave she was told that she and the child were paupers; that the position of affluence which her husband had occupied, and which she had aided in establishing, was but a myth; that the property which she had helped to earn and save by industry and frugality belonged to others; and that, instead of being the widow of a well-to-do Kansas farmer, she was a beggar woman with a child in her arms, dependent upon her husband's family for the means to return to her relatives in Pennsylvania. Then for the first time she learned that she had been ensnared and deluded. Then the fraud was discovered, and until that time the cause of action had not accrued. (Gen. Stat. 1897, ch. 95, § 12; Gen. Stat. 1899, § 4262.)

Error is assigned because the case was tried in the court below at the same term that the issues were finally made up. It appears, however, that the issues had been made up long prior to such term, although amendments were made at the same term at which the cause was tried. Under these circumstances, it was not error for the court to call the case for trial at such term. (*Rice & Floyd v. Hodge Bros.*, 26 Kan. 164.)

Mrs. Chapman, a witness offered by the plaintiffs below, was permitted to make the statement that Emaline Brown told her that the farm had been deeded to Samuel to prevent it from going out of the family, and to get it out of "her" hands, referring, presumably, to the wife of Van Voorhis. Emaline Brown was a witness for the defendant below, but no proper foundation was laid for impeachment. As a witness, she claimed, at the time the case was tried,

to be the owner of this land, and that after the action was commenced her son Samuel conveyed it to her. Both she and Samuel, in their testimony, claimed it had been conveyed to Samuel by Van Voorhis and wife in consideration of the original $3000 advanced to her son, and that Samuel had taken title for her benefit. In the conveyance to her, made while this action was pending, a recital to that effect was made. According to her contention then, as well as that of the defendant below, she was the real party in interest, and it is well settled that the admission of a real party in interest is admissible as against a nominal party. (1 A. & E. Encycl. of L. 179, and cases cited ; 1 Greenl. Ev. 180 ; 1 Phill. Ev. 486 ; *Hansen v. Parker*, 1 Wils. 256 ; *Barber's Adm'r v. Bennett*, 60 Vt. 662, 15 Atl. 348, 1 L. R. A. 224.)

Alma Harrison was a witness for plaintiffs below, and testified to conversations had with Emaline Brown, and also with Joseph Brown, in relation to the ownership of the farm after it was bought and the title of it placed in the name of Van Voorhis. In effect, she testified that they told her that the farm belonged to Van Voorhis. As to Emaline Brown this testimony was admissible, for the reasons last above given, and as to Joseph Brown, his attention was called to the matter while he was upon the stand, and proper foundation was laid for it, and it was admissible for the purpose of impeachment.

One Friesting was permitted to testify to the fact that Van Voorhis at one time paid to his father Joseph a large sum of money which Van Voorhis had received from the sale of products of the farm. Other witnesses also testified to similar transactions between Van Voorhis and his father. Indeed, it was made to appear that the father acted as banker for his son.

Friesting's testimony was admissible because it bore
upon the question, if it was a question, as to whether
Van Voorhis had repaid to his father and mother the
money advanced, with which he had bought the farm,
and, also, because the father claimed that he had paid
the taxes upon the land, and, irrespective of the ques-
tion as to whether a conspiracy was established be-
tween the father, mother and Samuel to defraud the
plaintiff widow, it was competent to show the real
method of doing business which had been pursued
between these different members of the same family.
A sufficient foundation was laid for the testimony of
these witnesses while Joseph Brown was upon the
stand.

It is also insisted that the widow was not compe-
tent to testify to the conversation between Samuel
Brown and her husband, Van Voorhis Brown, under
sections 322 and 323 of the civil code. (Gen. Stat.
1897, ch. 95, §§ 333, 334; Gen. Stat. 1899, §§ 4585,
4586). She did not testify to any communication had
between her husband and herself. She was a compe-
tent witness to testify to a conversation had between
Samuel Brown and her husband. (*National Bank v.
Beard*, 55 Kan. 773, 42 Pac. 320; *Pulsifer v. Arbuthnot*,
59 Kan. 380, 382, 53 Pac. 70.)

The contention of counsel for plaintiff in error, that
the court below erred in refusing to allow the expert
witness, Shelley, to be disputed upon a collateral mat-
ter, is disposed of by this court in *Gaunt v. Harkness*,
53 Kan. 405, 36 Pac. 739.

Counsel also insist that prejudicial error was com-
mitted by the trial court in making special findings of
fact without being thereto requested by either party.
This court has held : " A court may, of its own motion,
in addition to its general judgment, find specially upon

all the issues or upon a part of them." (*Farwell Co. v. Lykins*, 59 Kan. 96, 99, 52 Pac. 99.)

After the court had made special findings of fact, the defendant below made a written request for additional findings, and the failure of the court to comply with such request is assigned as error. Whatever may be the rule where a court refuses, upon request, to make a finding upon a matter material to the issue, upon which it has not found, there can be no doubt that in this case the failure of the court to make such findings was not error, for the requests were not that the court should find upon matters omitted, but that it should make findings which were antagonistic to those it had already made.

Counsel for plaintiff in error likewise contend that, because Emaline Brown furnished her son the money in the first place with which to buy this farm, she was the equitable owner of it "by virtue of a resulting or implied trust." In response to this contention, it is sufficient to say that the mother, having given the money to the son with the understanding that he was to buy a farm for himself with it, and having for years thereafter, with full knowledge of what he had done, acquiesced in and approved of the course he had taken, the case does not come within our statute relating to trusts and powers. (Gen. Stat. 1897, ch. 113, §§ 6, 8; Gen. Stat. 1899, §§ 7524, 7526.) In this connection the court below found :

"There was no agreement or understanding, oral or written, between Van V. Brown or his mother or father, or either of them, as to any interest, lien or claim that the said Emaline Brown might have in or upon said land by reason of having furnished the said $3000 with which Van V. Brown paid the purchase-price of said land."

The case of *Kennedy v. Taylor*, 20 Kan. 558, to which we are referred, is clearly not in point.

Finally, it is claimed that the child cannot be granted relief in this action, because he could not be affected by a fraud practiced upon one or both of his parents before he was born. The land in question was a homestead; it had not been alienated by the joint consent of husband and wife—the deception practiced upon the wife prevented the conveyance from so operating; the father was dead, and the child was an heir to that which the father equitably owned at the time of his decease. The land, having been alienated as the result of fraud, should be restored, and the child inherited an interest and was a necessary party to the action.

The findings of the court below fully sustain its judgment, and there was evidence in the case to sustain each of the findings. In the view taken by the court below of the testimony, its judgment was right, and as no material error was committed it must be affirmed.