Clester v. Clester.·

JAMES CLESTER et al., *Appellants*, v. IDA M. CLESTER et al., *Appellees*.

No. 18,124.

SYLLABUS BY THE COURT.

1. CONVEYANCE—*Husband to Wife—No Trust by Implication*. The mere fact that a conveyance is between husband and wife or parent and child or between persons occupying similar intimate relationships, and that no valuable consideration passes, is not sufficient to raise a trust by implication. There must be fraud, active or constructive, some betrayal of a confidence reposed or some breach of duty imposed by such relation. Neither character of fraud will be presumed from the fact alone that the relationship of the parties is such as to suggest that a fiduciary relation might have existed.

2. TRUSTS—*When Constructive Trust Arises—Equity*. A constructive trust will arise whenever the circumstances under which the property was acquired make it inequitable that it should be retained by the person who holds the legal title, but equity has no power to declare a trust and enforce it to prevent injustice merely because the transaction results inequitably to other parties.

3. ——— *Inequitable Conveyance to Wife—Equity Powerless to Raise a Trust by Implication*. However harsh or unjust or inequitable it may appear for a husband to make a gift to his second wife of his real estate and thus deprive the children of his first marriage of all interest therein, even though he acquired the real estate from moneys derived from their mother's separate property, equity is powerless to raise a trust by implication and enforce it on the ground that it is necessary to prevent a failure of justice.

4. CONVEYANCE—*By Husband to Wife—Where Burden Rests to Prove a Trust*. A conveyance of real estate by the husband to the wife or a purchase in her name, the consideration being furnished by him, is presumed to be a gift, and the burden rests upon those who assert that the transaction was intended as a conveyance of the legal title to the wife to be held in trust for the husband.

5. ——— *Husband Making Gift to Wife—When Valid*. A husband may make a gift of his real estate to his wife when no rights of creditors interfere, and it will be upheld as against

Clester v. Clester.

his heirs notwithstanding they were at the time the convey-
ance was made and continue to be dependent upon him for
subsistence and support.

6. EVIDENCE—*Fails to Establish Constructive Trust.* Upon the
facts and circumstances shown in the evidence in the present
case it is held that a constructive trust was not established,
and that the evidence was not sufficient to overcome the pre-
sumption that certain conveyances to the wife were intended
by the husband as a gift to her, and therefore that the de-
murrer to the evidence was rightly sustained.

Appeal from Sumner district court; A. M. JACKSON,
judge *pro tem.* Opinion filed April 12, 1913. Affirmed.
Rehearing allowed May 16, 1913. Opinion on rehear-
ing filed November 8, 1913. Reaffirmed.

*C. E. Elliott,* and *W. T. McBride,* both of Wellington,
for the appellants.

*James Lawrence,* of Wellington, for the appellees.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from a judgment sus-
taining a demurrer to plaintiffs' evidence. The action
was in ejectment and for partition of certain real
estate.

The appellants, who were plaintiffs below, are the
children of John Clester, deceased, who removed to
Kansas from Ohio in 1878, his first wife, the mother
of appellants, having died before the family left there.
The legal title to the real estate in controversy is in the
name of Ida M. Clester, the second wife, and the other
appellees are children of the second marriage.

It is the claim of appellants that John Clester at the
time of his death was the equitable owner of all the
real estate. There was evidence tending to show that
the mother of appellants inherited from her father a
sum of about $2000; that this money was brought to
Kansas and invested in farm land in Sumner county
by John Clester; that the family lived on the farm
for six or seven years, when it was sold and the pro-

ceeds invested in two hundred acres of other land in the same county, a part of which is the land involved in this action. Three years afterwards, in 1887, John Clester married Ida M. Clester and the family continued to occupy the two hundred acres as a home. In 1889 John Clester conveyed a part of the land directly to Ida M. Clester, the consideration named in the deed being one dollar and love and affection. In 1890 the rest of the tract was conveyed to her, a deed being made first to a son-in-law who soon afterwards conveyed to Ida M. Clester. The evidence tended to show that Ida M. Clester paid nothing for either conveyance, that she possessed no means of her own; and there was some evidence that subsequent to the conveyances she made statements and admissions to the effect that she held the title in trust; that she stated at one time that she knew that the money with which the land was purchased came from the first wife; again that she said it was her intention sometime to pay to the appellants their mother's share. There was evidence that after the conveyances John Clester continued to exercise the same control and management of the lands as before; and a witness testified to having heard him say that he intended to fix matters so that appellants would get the land. This, in substance, was the testimony relied upon by appellants.

They contend that the evidence and the fair inferences to be drawn from all the circumstances proven establish *prima facie* that the land belonged in equity to John Clester; that the question whether his intention was to make a gift to Ida M. Clester and to ignore the rights of the children by the first wife should have been submitted to the jury. It is broadly claimed that the evidence shows a constructive trust, or a trust *ex maleficio*.

The weakness in appellants' claim is the absence of any testimony to show an agreement at the time the conveyances were made by which Ida M. Clester was

to hold the land in trust for the husband. Had there been testimony that such was the agreement, the case might be said to fall within the provisions of section 8 of the act relating to trusts and powers (Gen. Stat. 1909, § 9701), and even though the agreement had been oral it would lie within the province of equity to raise a trust to prevent a failure of justice (*Rayl v. Rayl*, 58 Kan. 585, 589, 50 Pac. 501, and cases cited in the opinion). But there was no testimony showing any promise or agreement or understanding at the time the conveyances were made that she should hold in trust for him.

It is true that trusts by implication frequently arise in transactions between persons occupying such intimate relationships as that of husband and wife or parent and child, but the mere fact that the transaction is between husband and wife or parent and child, and that no valuable consideration passes, is not sufficient to raise a trust by implication. (*Brown v. Brown*, 62 Kan. 666, 675, 64 Pac. 599.) There must be fraud, active or constructive, and neither character of fraud will be presumed from the fact alone that the relationship of the parties is such as to suggest that a fiduciary relation may have existed; there must be some betrayal of a confidence reposed or some breach of a duty imposed by such relation. When either of these is shown equity is expressly authorized, under the exceptions stated in section 8, *supra,* to raise a trust by implication and to enforce it in furtherance of justice and to prevent fraud. (See *Kennedy v. Taylor*, 20 Kan. 558, 561.)

It is said:

"The test of such a trust is the fiduciary relation and a betrayal of the confidence reposed, or some breach of the duty imposed under it." (39 Cyc. 184.)

"The existence of the relation, and a subsequent abuse of the confidence bestowed under it for the pur-

41—90 KAN

pose of acquiring the property; are alone sufficient to authorize the enforcement of the trust." (*Trice v. Comstock,* 121 Fed. 620, 61 L. R. A. 176, headnote, ¶ 3.)

Nor will it do to say that fraud, active or constructive, is shown the moment it appears that the transaction results inequitably to some one else. However harsh or inequitable or unjust it may appear for the father of appellants to make a gift of all his real estate to the second wife and thus to deprive them of any interest therein, even though the land was acquired in the first place from moneys belonging to their mother, no one will contend that he might not do this lawfully. It is true, courts of equity raise a trust and enforce it whenever it becomes necessary to prevent a failure of justice. Stated in another way, a constructive trust will arise whenever the circumstances under which the property was acquired make it inequitable that it should be retained by the person who holds the legal title.

It is conceded that the land belonged at one time to John Clester, and it is not claimed that he was any the less the full owner because it was purchased in whole or in part from the proceeds of the first wife's separate property. Being the full owner of the land, he could, if he saw fit, lawfully convey it to his wife. (*Olson v. Peterson,* 88 Kan. 350, 356, 128 Pac. 191.) The presumption is that the conveyance directly to the wife or a purchase in her name upon a consideration paid by him was intended as a gift. (*Olson v. Peterson,* supra.) It is true that the presumption is not conclusive and may be overturned by evidence of a contrary intention. In the present case it can not, we think, be said that any of the evidence offered tended to overturn the presumption. There was no evidence whatever as to what the intention was, and nothing from which a fair inference can be drawn to the effect that it was intended to convey merely the legal title to be held in trust for the husband.

The appellants' argument in effect is, that it is unreasonable to assume that John Clester intended to convey to the second wife all the land he owned and to exclude them from any interest therein; and that from the mere unreasonableness of such an intention it is a fair inference that an agreement was made at the time by which Ida M. Clester was to hold the title in trust for him. The argument loses sight of the fact that, being the owner of the land, he could lawfully make a gift of it to the wife regardless of how unreasonable such a procedure might be or appear to be. The conveyance to her without a valuable consideration being presumed to have been intended as a gift, the burden rests upon appellants to establish the contrary.

If all that is required to defeat an absolute conveyance of real estate by the husband to the wife is a showing that it results in hardship and unfairness to other members of the family, then it follows that no matter what the intention may have been, the conveyance must stand or fall upon the question of how it may appear to affect the interests of persons other than the grantor and the grantee. The husband may have intended to make a gift to the wife, but his purpose fails if a jury will say that the making of a gift to her under the circumstances was unreasonable because it results in hardship to others. That such is not the law is too apparent to require argument or the citation of authorities. It is contended, however, that if it be conceded that there was no evidence of any agreement or understanding to the effect that Ida M. Clester should hold the title in trust for John Clester, still there was sufficient evidence of a constructive trust; and authorities from textbooks and decisions are cited which declare that constructive trusts do not arise by or depend upon agreement or intention, but arise by operation of law. But before a constructive trust will be

raised by implication of law; it is agreed by the authorities upon which appellants rely that fraud, active or constructive, is essential.

"Constructive trusts do not arise by agreement or from intention but by operation of law; and fraud, active or constructive, is their essential element. Actual fraud is not necessary, but such a trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts *ex maleficio* or *ex delicto,* or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice." (39 Cyc. 169, and cases cited in notes.)

It can hardly be claimed that there was the slightest evidence to establish the peculiar kind of constructive trust known as a trust *ex maleficio.*

"A . . . form of trusts *ex maleficio* occurs whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose—as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like—and, having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit." (2 Pomeroy's Equity Jurisprudence, 2d ed., § 1055.)

Obviously the claim of appellants that a constructive trust is established must rest solely upon the theory that the evidence is sufficient to authorize a court of equity to declare that, under all the facts and circumstances of the case, it was so unjust and inequitable for the father to make a gift to his wife of all his lands as to amount to a constructive fraud upon appellants'

rights.   Now John Clester owned the land, and either he possessed full dominion over it and could dispose of it as he saw fit, or it is the law that his obligation to his children, the appellants, in some manner restrained his right to dispose of it as he pleased.   Some reliance seems to be placed upon the language of the court in the opinion in *Horder v. Horder,* 23 Kan. 391, where it was held that a conveyance by a husband to his wife without further consideration than love and affection was valid after his death, as against an heir who was of full age at the time of the conveyance and who was not in any manner dependent upon the grantor for subsistence or support.   In the opinion it was guardedly said by Justice Valentine:

"Men of sound minds and not under guardianship should have the privilege of disposing of their property as they please, so long as they do not interfere with the rights of creditors, or of persons dependent upon them for support.   We have frequently had occasion to examine into the validity of sales and conveyances from husbands to wives, and we have invariably upheld the validity of such sales and conveyances so far as it was equitable to uphold the same." (p. 392.)

The opinion went no further than the peculiar facts in that case required.   In the present case there was no showing as to the situation of the appellants, their ages at the time of the conveyances, or whether or not any of them were dependent upon the grantor for support. But if they had been dependent upon him for subsistence and support when the conveyances were made, and had continued to be so dependent to the time the action was brought, has equity power to hear evidence and determine whether a gift to the wife, made by the husband who is of sound mind, shall be set aside on the ground that it deprived dependent heirs of the grantor of their support?   John Clester might lawfully have devised all his real estate by will to his wife, or have sold it in his lifetime and disposed of the proceeds as he

pleased, without interference by courts of equity; and, subject only to the rights of creditors, he could lawfully convey it to his wife as a gift.

The fact that John Clester continued to manage and control the lands in the same manner and to the same extent after as before throws no light upon the intent with which he conveyed or caused to be conveyed the title to the wife. The family occupied the land as a farm, and if she had owned the title from the first he might and probably would have managed and controlled the business in the same way. The failure of appellants to produce evidence of some agreement on the part of Ida M. Clester to hold the title in trust for John Clester was fatal to their case. The presumption is that the conveyances were in the nature of gifts from the husband, and the burden of proving the contrary rested upon appellants.

The judgment is affirmed.

---

OPINION ON REHEARING.

*Per Curiam:* Upon rehearing the former judgment is adhered to.