No. 33,934

KATHERINE ALLBERT, and FREDERICK ALLBERT, a Minor, by His Guardian, KATHERINE ALLBERT, *Appellants*, v. E. F. ALLBERT, *Appellee*.

(83 P. 2d 795)

Opinion filed November 5, 1938.

*Roy J. McMullen,* of Great Bend, and *Elmer M. Roth,* of La Crosse, for the appellants.

*W. H. Russell* and *D. A. Russell,* both of La Crosse, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action by a widow and her minor son, of whom she was the legal guardian, against a brother of the deceased husband and father of the plaintiffs, to require the defendant to convey to plaintiffs a certain quarter section of land in Rush county, Kansas, quieting the title thereto in the plaintiffs with full right of possession, and to require the defendant to account to plaintiffs for all income and profits he may have obtained from said real property.

There was a preliminary motion, a demurrer and amendments, and finally a second amended petition and a demurrer thereto. The demurrer was sustained on the first and second grounds, which were

the fifteen-year statute of limitations of adverse possession and the one-year statute of limitations as to contest of a will (G. S. 1935, 60-304, sub-div. 4, 22-223). From this ruling sustaining the demurrer to the amended petition the plaintiffs appeal.

The substance of the second amended petition was that Katherine Allbert and Frederick M. Allbert, her minor son, for whom she was duly appointed guardian, were residents of the state of Ohio, and that the husband and father of these plaintiffs, Frederick Allbert, Sr., resided in the state of Ohio at the time of his death, October 24, 1934. That said Frederick Allbert, Sr., and plaintiff Katherine Allbert are both deaf mutes. That Frederick, Sr., was wholly without responsibility and lacked business capacity, and trusted his parents, William Allbert and Francis M. Allbert, both of whom are now deceased. "That sometime during the first part of the year of 1915, . . . William Allbert, or Francis M. Allbert, . . . or both of them, agreed with Frederick Allbert, Sr., . . . to purchase real property with Frederick Allbert, Sr.'s, money; that on or about the 15th day of February, 1915, . . . William Allbert . . . or Francis M. Allbert, . . . or both of them, made and entered into a contract to purchase the following-described real estate, to wit: "Northwest Quarter (NW ¼) of section five (S 5), township seventeen (T 17), range nineteen (R 19) west of the 6 P. M. in Rush county, Kanses," from H. L. Baker, of La Crosse, Kan., purporting to be an absolute sale of the aforesaid real property, to the said Francis M. Allbert . . . in consideration of the sum of $4,000, which said sum of money, and which consideration was paid by Frederick Allbert, Sr. . . .; that pursuant to said contract, said H. L. Baker made and delivered his warranty deed, purporting to convey said described real estate, to the said Francis M. Allbert, . . . which deed was dated the 15th day of February, 1915, and recorded on the 25th day of February, 1915, in volume 8 of Deeds, page 599, in the office of the register of deeds of Rush county, Kansas; that the said conveyance was made to the said Francis M. Allbert, without the consent of the said Frederick Allbert, Sr., . . . with whose money the consideration was paid."

That the mother of Frederick, Sr., executed a will, dated January 4, 1933, in which she devised to another son, Edwin Allbert, or E. F. Allbert, this same real property by definite description. This will was admitted to probate June 29, 1934, in Rush county, Kansas, and the estate was settled and order made by the probate judge

discharging the executor and holding that Edwin Allbert, or E. F. Allbert, was the absolute owner in fee simple of that quarter section. The petition further alleged that Edwin Allbert paid no consideration for said real property and is in possession thereof by virtue of the will of his mother. That the mother, in her lifetime, either personally or by agent (her husband, William Allbert), accounted for the income and profits received from said real estate from February 15, 1915, until on or about June 29, 1934, and made remittances to said Frederick for such income and profits.

For a second cause of action the plaintiffs alleged that they are the owners of an equitable estate in the above-described quarter section of land and are entitled to the possession thereof, their title being based upon the statements set forth in the first cause of action, and that the defendant unlawfully keeps them out of possession thereof.

For the third cause of action the plaintiffs alleged that the defendant has kept and appropriated to his own use the rents and profits of said described land since June 29, 1934, and has made no payments of rents or profits thereon or given an account thereof and that he is not entitled thereto for the reasons stated in the earlier part of the petition.

Appellants contend there was error in sustaining the first and second grounds of the demurrer of defendant by applying the fifteen-year and the one-year statutes of limitations to the allegations of the amended petition. From the briefs and reasoning of both parties it can readily be concluded that the main question here involved is whether or not the allegations of the petition constitute a trust of some kind, either implied or resulting, and if those allegations, taken as true, as they must be upon the hearing of a demurrer, do not constitute a trust, the reasoning is strongly in favor of the action being barred by the statutes of limitations, as held by the trial court.

The appellants urge that their action is based upon G. S. 67-406 and 67-408, which are as follows:

"67-406. When a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections."

"67-408. The provisions of the section next before the last shall not extend to cases where the alienee shall have taken an absolute conveyance in his

.own name without the consent of the person with whose money the consideration was paid; or where such alienee in violation of some trust shall have purchased the land with moneys not his own; or where it shall be made to appear that by agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof."

The intervening section 407 does not concern us in this case, as it has to do with the rights of prior creditors. The amended petition asserted that Frederick M. Allbert furnished the consideration for the purchase of this land in the sum of $4,000 upon an agreement with his father and mother to purchase said land, that they did so, but took the deed in the name of his mother without his consent. These allegations are apparently in full conformity with the first part of the above section 408. The petition further alleged that the mother or her agent, her husband, accounted to Frederick, Sr., for the income and profits of the land from the time of its purchase in February, 1915, until her death shortly prior to June 29, 1934. This conduct of the mother would be confirmatory of the alleged agreement to purchase the real estate with Frederick's money.

In the early case of *Kennedy v. Taylor*, 20 Kan. 558, it was held as to the allegations necessary under the first part of this section 408 to constitute a trust on the hearing of a demurrer to the petition, as follows:

"In an action to enforce a trust, a petition which alleges that B received certain moneys from A 'for the purpose, and with the express understanding, that he should invest the same for A in a farm, store, or other business,' and that he purchased certain described real estate therewith, and took the title in his own name, and thereafter denied that A had any right or interest therein, sufficiently charges, as against any objection raised by demurrer, that B took the title in his own name without the consent of A., to bring the case within the first clause of section 8 of the acts of 1862 and 1868 concerning trusts and powers." (Syl.) (*Lyons v. Bodenhamer*, 7 Kan. 455; *Franklin v. Colley*, 10 Kan. 260.)

Similar sections to this one of ours are referred to in Restatement of the Law of Trusts, § 440, comment *i*, as follows:

"In several states it is provided by statute that when a conveyance of land is made to one person and the consideration is paid by another, no trust shall result in favor of the latter unless the transferee (1) takes the conveyance in his own name without the consent or knowledge of the person paying the consideration. . . ."

Implied trusts are defined in 65 C. J. 221 as follows:

"Implied trusts are more frequently defined as those which, without being

expressed, are deducible from the nature of the transaction as matters of intent, or which are superinduced upon the transaction by operation of law as matters of equity, independently of the particular intention of the parties. However, some definitions disregard the element of intent and define these trusts to be such only as arise by operation of law. By some authorities the term 'implied trusts' is used in a sense exclusive of resulting and constructive trusts to designate a form of express trusts."

On the next page, in distinguishing a resulting trust from a constructive trust, both of which are implied trusts, it is said:

". . . a resulting trust has been defined to be one raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found in the nature of their transaction, but not expressed in the deed or instrument of conveyance." (65 C. J. 222.)

Appellee cites, in order to show that this is not a trust, the case of *Brown v. Brown*, 62 Kan. 666, 64 Pac. 599. The first paragraph of the syllabus states the action was one to set aside a deed on the ground of fraud, and the fifth paragraph, on which counsel relies, is as follows:

"Where a son purchases a farm with funds furnished to him by his mother for that purpose, and takes title in his own name, without any agreement or understanding as to how the title shall be taken, or as to any interest of the mother in the land, and when the mother, with full knowledge of the facts, speaks of and treats the farm for many years as belonging to her son, and makes no complaint to him or to others regarding the title, but acquiesces in that which has been done, it will be presumed, after the death of the son, that the deed conformed to the intention of the parties, and a resulting trust in favor of the mother will not be inferred." (Syl. ¶ 5.)

The above holding is quoted in full to show that the principal feature in the case at bar is entirely omitted from the Brown case, namely, that the conveyance was made without the consent of the party who furnished the funds for the purchase of the property. This decision, therefore, will not help us to say that the agreement between the son and the mother in the case at bar was not a trust. Besides, there is no fraud alleged in the amended petition in the case at bar, nor is it particularly argued that it should be inferred. We cannot avoid concluding from the authorities above cited that the allegations of the petition stated a resulting trust.

Now the remaining question is, whether such a trust as alleged in the amended petition can be barred by the fifteen-year statute of limitations for adverse possession or the one-year statute of limitations for contest of wills. On the question of the running of the statutes of limitations the dates of the transactions have been

heretofore stated, including the death of the two parties most directly connected therewith. This action was filed February 8, 1937. The appellants contend not only that an implied or resulting trust is shown by the allegations of the amended petition to have existed, but they showed if there was any repudiation of the trust, that it did not occur prior to June 29, 1934, when the will of the mother was admitted to probate and she ceased to remit the income and profits of the farm.

In *Cooley v. Gilliam*, 80 Kan. 278, 102 Pac. 1091, it was held that—

"Ordinarily the period of time limited for the commencement of an action against a trustee does not begin until he repudiates the trust or denies his liability, and it should appear that the beneficiary had, or ought to have had, knowledge of such repudiation or denial before the statuatory period begins to run." (Syl. ¶ 3.)

Appellee insists that this case is not applicable because the question of the statute of limitations was not injected into the case until it reached the supreme court. The opinion does state that "The answer was a general denial and did not raise the question of the statute of limitations. . . . The question was not raised in the district court except by demurrer to the petition and objection to the testimony under it." The question in the case at bar was raised by demurrer in the district court, the same as it was raised in the Cooley case, and in discussing the question of statute of limitations in the opinion almost the exact language is used there as is copied above from the third paragraph of the syllabus.

It was said in the case of *Allen v. Bartlett*, 52 Kan. 387, 391, 34 Pac. 1042, that—

"It is well settled that no statute of limitations runs against the beneficiaries to a trust fund so long as the trustee continues to recognize their rights."

Appellees seriously object to this as being applicable to the facts in the case at bar because it concerns an action by an administrator *de bonis non* against the former administrator. All through the statutes prescribing the duties of an administrator his duties are frequently referred to as a trust. (G. S. 1935, 22-301 to 22-331.)

In *Collamore v. Wilder*, 19 Kan. 67, it was held that—

"An administrator is merely the agent or trustee of the estate of the decedent, acting immediately under the direction of the law prescribing his duties, regulating his conduct, and limiting his powers." (Syl. ¶ 3.) (*Aetna Life Ins. Co. v. Swayze*, 30 Kan. 118; *Crawford's Adm'r v. Lehr*, 20 Kan. 509.)

In 11 R. C. L. 18 and 19 it is said:

". . . it has been said that the position of an administrator merely resembles an office, and more strictly speaking, is a trust. . . . Apart from conflicting views as to the foundation of the power of executors, the rule seems to be generally acquiesced in that executors as well as administrators are trustees; that funds of the estate in their hands are trust funds; and that they may be held to the responsibilities and duties of trustees."

In *Woodbury v. Schofield*, 131 Kan. 432, 292 Pac. 802, it was said:

"An executor is not an insurer of moneys and properties of an estate which come into his.possession, but with respect to such property he is a trustee, not only for the benefit of the creditors of the estate, but of heirs, devisees, or legatees." (p. 434.) (See, also, *Shintaffer v. Bell,* 134 Kan. 101, 4 P. 2d 764.)

We see no substantial difference where an administrator is involved except the duties of the administrator are prescribed by statute.

The cases of *Main v. Payne,* 17 Kan. 608, and *Kennedy v. Kennedy,* 25 Kan. 151, are cited to show a different conclusion as to the barring of the statutes of limitations, but they are not actions for the recovery of real property as shown by the opinions, but are actions on the grounds of fraud.

In *Hunnicutt v. Oren,* 84 Kan. 460, 114 Pac 1059, it was held:

"Where a grantee accepts title to land, without any consideration therefor, under an agreement with the grantor to hold it for her, and without any fraudulent intent, a trust results.

"Where a trust results by implication of law, a recognition by the trustee of the rights of the equitable owner tolls the running of the statute of limitations until the holder of the legal title disavows the trust." (Syl. ¶¶ 1, 2.)

It is said in volume 17 of R. C. L.:

"A trustee cannot ordinarily plead the statute of limitations until he has previously divested himself of the trust by discharging it, or by denying his liability to discharge it further, and knowledge of this fact has been brought home to the cestui que trust. On the repudiation of the trust, the trustee's possession becomes adverse, and suit must be prosecuted within the time allotted by the statute of limitations." (p. 710.)

"If a voluntary trustee does not repudiate the trust, but continues to act under and in harmony with it, the beneficiaries have no right of action against him, and the statute must remain inoperative until the trust is repudiated." (p. 794.) (See, also, page 795.)

Many other cases have been cited along this line, but because they contain elements of fraud, either alleged, resulting or constructive, they are purposely not enumerated in this opinion.

We have no hesitancy in concluding that the allegations of the

amended petition not only constituted a trust, but especially the one about the taking of the deed in the name of the mother without the consent of the son, coupled with the further allegation that the mother until the time of her death remitted to the son the income and profits of the farm, prevented the statute of limitations from commencing to run. It never was repudiated until after her death.

We also hold that this is not a contest of the mother's will, and therefore that statute does not apply. The defendant as devisee could not by the will acquire any greater estate than that held by the testator, his mother, and that was a trust. It is said in 9 R. C. L. 89:

"The heir of one who holds real property in trust for another takes the legal title subject to the trust. . . . The rule that the heir of the trustee takes subject to the trust is equally applicable in the case of a resulting trust, as where one purchases land in the name of another and pays the purchase price. The death of the nominal purchaser and the descent of the mere naked legal title cannot affect the trust."

We conclude that the demurrer should have been overruled. The judgment is reversed.