No. 36,027

KATHERINE STAAB, JULIA STAAB, ELIZABETH STAAB BERENS, MARIE STAAB DWYER, and ALOIS W. STAAB, *Appellees*, v. ALEX V. STAAB, JOHN C. STAAB, and CHRISTINA STAAB, His Wife, *Appellants*.

(145 P. 2d 447)

Opinion filed January 22, 1944.

*Henry F. Herrman,* of Hays, and *Jerry E. Driscoll,* of Russell, were on the briefs for the appellants.

*D. M. McCarthy,* of Hays, and *E. H. Hatcher,* of Topeka, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action to enforce a trust relating to land. Plaintiffs prevailed and defendants appeal.

The action was instituted by Katherine Staab, Julia Staab, Elizabeth Staab Berens, Marie Staab Dwyer, and Alois W. Staab, sisters and a brother of the defendants, Alex V. Staab and John C. Staab. The defendant, Christina Staab, is the wife of John C. Staab.

The petition was originally framed as one count but was later separated into two counts over appellees' objection and as a result of motions filed by appellants to require appellees to elect or separately state and number their respective causes of action. The appeal is from orders overruling defendants' separate demurrers to each count of the second amended petition. The demurrers were all based on four identical grounds. Only two of such grounds are urged by appellants now and it is to them that we shall direct our attention. They are that the facts alleged in each count are insufficient to constitute a cause of action and that each cause of action, if one existed,

is barred by the two year statute of limitations. (G. S. 1935, 60-306, *third.*)

The material allegations contained in the first count, in substance, are:

Plaintiffs and defendants, John C. and Alex V. Staab, are the only children of Carl Staab, who died May 21, 1937; Carl Staab was an uneducated person; he could not read or write; he could not even sign his own name and orally had granted to John C. Staab the privilege of signing his name to all necessary documents; he placed the utmost confidence and trust in his son, John, in all matters of business where written instruments were required and sought the advice of John on all such matters; the son, Alex, worked with John and enjoyed the same confidence from his father except in the handling of written instruments; in July, 1931, there was considerable oil activity in Ellis county where the land in question was located; John and Alex orally suggested to their father that since it was necessary for them to transact his business by reason of his age, failing health and inability it would be more convenient and to his interest and to the interests of all the children if he executed deeds to John and Alex covering the lands described in the petition; John and Alex advised the father that if he would convey such lands to them they would hold the property in trust for him during his lifetime, account to him for all proceeds received therefrom and at his death they would make an equal division of the property among all of his children; the father had absolute confidence in his sons and orally agreed to that arrangement; on July 24, 1931, he executed deeds to the defendant sons covering the land in question.

It was further, in substance, alleged:

The father died testate on or about May 21, 1937; in his will he left to the two defendant sons all the property which he owned at his death except certain nominal sums in cash which he bequeathed to each of the plaintiffs; the will is in the possession and control of the defendants and a copy thereof cannot be attached; immediately after the father's funeral on May 23, 1937, plaintiffs and defendants had a family conference; at that time John stated he and Alex would give Katherine Staab and Julia Staab each $700 and would give Elizabeth, Marie and Alois Staab each $500 from the proceeds which had accumulated from the father's life estate; such sums have been paid to all of the plaintiffs except Katherine and Julia Staab; John inquired whether any of the children desired to see the will but

stated the will might cause some feeling; he, however, stated that each of the plaintiffs would receive his share of the father's property which the father had deeded to him and Alex; later and on December 2, 1937, John told Roy Dwyer that he and Alex would appreciate it if he, Roy Dwyer, would so advise the plaintiffs; in December, 1937, Roy Dwyer, husband of the plaintiff, Marie Staab Dwyer, advised all of the plaintiffs except Alois W. Staab that John and Alex were going to give plaintiffs their share of the property but that owing to the small production of oil, due to proration restrictions, they thought the division should be made at a later time; again in July, 1938, Alex informed Roy Dwyer that he was going to see that plaintiffs got their share of the father's property; these statements were made by John and Alex for the purpose of deceiving the plaintiffs, giving them a feeling of security and delaying a definite controversy over the rights of plaintiffs until time had strengthened their wrongful purpose of acquiring the interests of plaintiffs in the property; plaintiffs at that time, however, had absolute confidence in their brothers and therefore raised no objection to their continued control over the property.

It was further, in substance, alleged:

During the year 1940 it became a matter of common knowledge that John and Alex Staab were receiving large sums of money from oil royalties from the lands in question; the confidence of plaintiffs in John and Alex began to weaken and on July 11, 1941, plaintiffs held a conference at Hays, Kansas; they appointed Roy Dwyer to speak to John and Alex in their behalf for the purpose of obtaining a definite settlement of their property rights; Roy Dwyer so advised John and Alex but they informed him they preferred to talk with the plaintiffs; during the evening of July 11, 1941, all of the plaintiffs, except Alois W. Staab who was not present, were informed by Alex and John that they had discussed the matter and had decided to keep the property conveyed to them by their father and would make no conveyance to plaintiffs or recognize their interests in the property other than to pay them a nominal sum in cash; on July 11, 1941, John and Alex repudiated the arrangement, agreement and trust which they had with their father at the time he conveyed the property to them for the benefit of himself and his children.

Paragraph XI alleged:

"By reason of the confidential relationship which existed between the defendants and Carl Staab and by reason of the oral agreement set out in para-

graph V hereof, a trust arises in favor of the plaintiffs by implication of law, and the plaintiffs are each of them entitled to a one-seventh (1/7) interest in the property described in paragraphs III and V hereof, and are each entitled to a one-seventh (1/7) of all the rents and royalties derived from said property since the death of their father Carl Staab, May 21, 1937."

The second count made all the averments contained in the first count except paragraph XI a part of the second count and, in substance, further alleged:

Defendants had no intention at the time of entering into the trust agreement for the benefit of the father and all of the children to keep the agreement but made the agreement for the wrongful purpose of obtaining a deed to the land in order that they might obtain the interest of plaintiffs on the death of their father; by reason of the trust agreement made with the father and by reason of the deceit practiced by defendants upon their father, Carl Staab, a trust has arisen in favor of plaintiffs by implication of law and plaintiffs, and each of them, are entitled to a one-seventh (1/7) interest in the land and in the rents and royalties derived therefrom since the father's death.

Before considering the demurrers to each count we pause to note appellees' contention that the facts pertaining to actual fraud, now alleged in count two and formerly pleaded as a part of count one, all actually constitute but one cause of action. Appellees believe they should not have been required to separately state and number the charge of actual fraud as a separate and distinct cause of action. The theory of their contention is the petition stated a cause of action on the doctrine of an implied trust and that such a trust may result from constructive or actual fraud. It has been held that if a petition is not drawn upon a single and definite theory, or there is such a confusion of theories alleged that the court cannot determine from the general scope of the petition upon which of several theories relief is sought, the petition is insufficient. (*Sluss v. Brown-Crummer Inv. Co.*, 137 Kan. 847, 854, 22 P. 2d 965; *Lofland v. Croman*, 152 Kan. 312, 103 P. 2d 772.) We assume it was probably on that basis that the trial court sustained appellants' motion to require appellees to elect upon which theory they would rely or to separately state and number the respective causes of action. In view of the manner in which the trial court later, when ruling on the demurrers to the respective counts, considered the petition in its entirety we do not regard the former order requiring a separation of the precise theories as very important in this particular case. We also observe that all

of the really essential elements contained in count one have been made a part of count two by reference. It follows count two now actually embraces the essential allegations formerly contained in the entire petition. In this particular case it is well to remember the relief sought in the entire petition, or in either count, is to impress the land with a trust. The form of the relief sought is therefore not inconsistent but identical and only one satisfaction can be had. It is not like cases in which, for example, it is impossible to ascertain from the petition whether a party seeks affirmance or rescission of a contract. The question of the statute of limitations as applied to the facts pleaded will be treated later.

But let us for the moment consider count one separately. Did it state a cause of action on any theory? The first count, in substance, alleged:

(1) The existence of a confidential relation between the aged and uneducated father and his sons; (2) a transaction induced by that relation; and (3) a breach by defendants of the confidence reposed. When those conditions exist the law implies a trust commonly known as a constructive trust. (*Clester v. Clester*, 90 Kan. 638, 135 Pac. 996; *Silvers v. Howard*, 106 Kan. 762, 769, 190 Pac. 1.) We hold the first count stated a cause of action on the theory a trust arose by implication of law.

Did the second count state a cause of action? From what has been said it is clear actual fraud is not necessary to create a trust by implication of law. That fact, however, does not mean an implied trust cannot also arise from actual fraud. It often so arises although proof of such fraud is frequently difficult. A trust which the law implies from existing facts and circumstances, that is, a trust which arises by operation of law, may be established by either actual or constructive fraud. (*Kahm v. Klaus*, 64 Kan. 24, 26, 67 Pac. 542; *Gemmel v. Fletcher*, 76 Kan. 577, 586, 92 Pac. 713; *Clester v. Clester*, supra, *Ballard v. Claude Drilling Co.*, 149 Kan. 506, 510, 88 P. 2d 1021.) On a demurrer the allegation of facts constituting actual fraud, being properly pleaded, are, of course, accepted as true. Here they were so pleaded. We hold the second count stated facts which constituted a constructive trust based on actual fraud and, with the essential allegations from count one incorporated in count two, also a constructive trust under which it was not necessary to prove actual fraud by appellants at the inception of the transaction with their father.

Appellants contend the petition discloses on its face the two-year statute of limitations had run against both causes of action. They argue the statute started to run on July 24, 1931, the date the deed was executed and delivered to them by their father. The instant action was filed February 17, 1942. Appellants concede it has been held the statute does not begin to run from the date a trustee obtains title to land if he subsequently recognizes the existence of the trust, or, in a case of fraud, the fraud is not and in the exercise of reasonable diligence could not have been discovered until later. (*Kahm v. Klaus,* 64 Kan. 24, 26, 67 Pac. 542; *Hunnicutt v. Oren,* 84 Kan. 460, 114 Pac. 1059; *Bell v. Bank of Whitewater,* 146 Kan. 901, 906, 73 P. 2d 1059.) Appellants, however, argue the first count does not charge a later recognition of the trust by them. With that contention we do not agree. The petition was not motioned in that respect. While the petition does not expressly employ the term recognition it alleges facts which are in harmony with and disclose a later recognition of the trust by appellants. It discloses that between the father's death in 1937 and July 11, 1941, the trustees recognized the trust agreement and made payments to some of the appellees from income derived from the father's estate and made a promise of payments therefrom to the remaining appellees. They further recognized the trust between those dates by promises to give appellees their share of the property. The confidence of appellees in appellants did not begin to weaken until some time in the year 1940 when oil production increased, the exact date not being stated, and they did not learn until July 11, 1941, that appellants had considered and decided to breach the trust agreement. Touching appellants' breach of trust and the discovery of the alleged fraud, the trial court stated:

"In the cases at bar, fraud did not necessarily enter into the transactions until the abuse of the alleged confidential relations, or, in other words, a breach of the confidence reposed. It is true that under the second counts of these petitions, plaintiffs allege actual fraud on the part of the defendants at the time the properties were conveyed to them, but it appears to me that from the entire petitions it must be inferred that the alleged fraud was not discovered by the plaintiffs until the defendants repudiated their trust on July 11, 1941."

From the above quotation it will be observed the trial court referred to *petitions.* The court at that time was considering identical demurrers to a petition in a similar action between the same

parties. (*Staab v. Staab*, case No. 36,026, post.) With the above quoted interpretation of the instant petition by the trial court, we agree. It follows the first notice which appellees actually had, or in the exercise of reasonable prudence could have had, of appellant's breach of trust was concurrent with the discovery of the actual fraud alleged. That was on July 11, 1941. This action was filed February 17, 1942, and was in time on the theory of actual fraud alleged in count two under the provisions of G. S. 1935, 60-306, *third*, which bars an action based on fraud within two years after the discovery of the fraud. (*Bell v. Bank of Whitewater*, supra, p. 906.) The action was also in time on the theory of a constructive trust alleged in count one. That is true in the instant case whether, as frequently stated, the statute begins to run from the date the trust is repudiated, *Flitch v. Boyle*, 147 Kan. 600, 78 P. 2d 9; *Allbert v. Allbert*, 148 Kan. 527, 83 P. 2d 795, and cases therein cited, or whether the rule is as sometimes stated, namely, that the statute does not begin to run from the date of demand on the trustee and repudiation by him, but starts to run from the date the trustee commits a wrong or breach of his trust by which he becomes chargeable. (37 C. J., Limitation of Actions, § 270, page 909; 34 Am. Jur., Limitation of Actions, § 179.) In this case the first wrongful act or known breach of trust by the trustee was their repudiation of the trust on July 11, 1941, the date the beneficiaries demanded settlement under the trust agreement. In passing we pause to note that appellant's contention the cause of action arose in 1931, that is, on the date of the execution and delivery of the deed to them, is entirely unsound. The father lived until May, 1937. Manifestly, during his lifetime appellees had no interest in his property which they could assert against the trust he had created. Thereafter appellants recognized the trust and lulled appellees into a sense of confidence and security until the confidence reposed was breached. Equity and good conscience will not permit appellants to now take advantage of a delay in filing suit occasioned by their own wrongdoing and that is true whether the wrong consisted in a breach of trust formerly recognized or in actual fraud and its successful concealment.

Appellants, in the district court and here, rely primarily upon the case of *Herthel v. Barth*, 148 Kan. 308, 81 P. 2d 19, 119 A. L. R. 326, as authority for their contention the instant action is barred.

The theory of plaintiff in that case was the statute of limitations had been tolled by reason of defendants' nonresidence from the state at all times since the alleged fraudulent oral contract relied upon to create a constructive trust, was made. We held the action according to plaintiffs' own theory was one in rem, namely, an action to impress the land with a trust, that defendants' nonresidence did not prevent the filing of an action in rem and, hence, did not toll the statute of limitations. We also clearly stated the cause of action in that case, according to the theory of plaintiffs' petition, had accrued at least six years prior to the commencement of the action and that the action, being based on fraud, was barred by the provisions of G. S. 1935, 60-306, *third*. The district court properly held the decision in the Herthel case was not controlling in the instant case.

It may be helpful to comment briefly concerning the fact that the petition in this case and in the case of *Staab v. Staab*, No. 36,026, post, is now framed in two counts. The fact the petitions are so framed simply serves to apprize appellants of the theories upon which appellees seek the same identical relief. The relief sought, irrespective of the theories alleged, is to impress the land with a trust. In actual practice each case will be tried as one cause of action. In each action all the available evidence on both theories of relief, of course, will be adduced and the relief sought will be granted, if established, on either theory.

The judgment overruling the demurrers is affirmed.